[Crim. No. 3332.   First Dist., Div. Two.   Mar. 14, 1957.]

THE PEOPLE, Respondent, v. CHONG WING LOUIE, Appellant.

Edward T. Mancuso, Public Defender (San Francisco), and Abraham M. Dresow, Chief Deputy, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Marvin J. Christiansen, Deputy Attorney General, for Respondent.

BRAZIL, J. pro tem.*—The defendant was found guilty of possession of a preparation of yen shee, an opium derivative, in violation of section 11500 of the Health and Safety Code, by the court sitting without a jury, the same having been personally waived by the defendant.

He now appeals from the judgment of conviction and the order denying a new trial on the ground that the court was in error in overruling his objections to the admission of evidence; claiming it to have been obtained as the result of an unlawful search of his room. In the conclusion of his brief, appellant makes a mild claim that despite the officer's testimony on the subject, he ought not to be believed because one can't smell yen shee from a distance.

Sometime during the late evening of July 24, 1956, Officer Christiansen of the Narcotics Detail of the San Francisco Police Department, picked up an office memorandum about "a user of dope in room 42 at 66 Clay Street." The complaint was anonymous, and that is about all the information the officer had when he and four others from the department set out for the rooming house on Clay Street. They had a key to the outside door of the building which had been obtained from the owner on a previous case involving the same premises. They had no search warrant for the room or building before obtaining the evidence, to the admission of which defendant has objected.

The officer testified that he had been with the narcotics detail about three years; that he had smelled opium being smoked approximately three or four dozen times; and that he had seen narcotic paraphernalia in hundreds of cases. As he approached room 42, the occupancy and control of which by the defendant is admitted, the witness testified, "I smelled the odor of opium emanating from room 42." The door to the room was ajar about 6 inches, through which opening he saw syringes, burnt spoon, with needles, commonly used by addicts shooting narcotics intravenously. Thereupon, they entered the room, a small one about 5 feet by 8 feet, and found a packet of black substance in the top dresser drawer, which later turned out to contain 23 grams of yen shee.

While the defendant was not in the room when the officers entered, he had been seen by the witness just before that, in an adjacent room, a common kitchen, cooking rice on a gas stove. After entering the defendant's room and finding the yen shee, the officers looked for him in the kitchen, but he

*Assigned by Chairman of Judicial Council.

had gone without even stopping to turn off the gas under the rice which by then had started to burn. The officers arrested him about an hour later when they saw him behind some fruit cases at the corner of Clay and Front, a short distance from his home. He had a key in his pocket to room 42; and in response to inquiry told the police he lived there.

To take the last point first, there appears on reading the transcript, to be no conflict in the testimony of witness Bergmans, a chemist, and Officer Christiansen about the odor of yen shee or opium. Even if there were, it would be of no avail to the appellant, for the officer testified positively that he smelled opium coming from the room before he entered, and that yen shee, which is the residue of smoked opium, and opium smell alike. The trial court's finding on this issue is controlling here, for there is certainly nothing inherently improbable or unbelievable about this testimony.

Now as to the issue on the presence or absence of reasonableness of the search which turned up the evidence to which defendant objected, there can be little doubt that the trial court was correct in its ruling.

If the officers had acted solely on the anonymous information they had when they left the police station for the Clay Street rooming house, the search would surely have been unreasonable. Quoting from *Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36] on this subject we find: "Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency, an arrest may not be based solely on such information."

The entry of the rooming house at the street level by the police must necessarily have been by and with the consent of the owner, they having gotten a key from him for such purpose on a previous occasion; and so was lawful. In at least two cases involving a search of defendant's room in a private home without a warrant and in defendant's absence, the Supreme Court held such conduct to be lawful where the officers, acting in good faith, relied on the apparent authority of the homeowner to justify the search with the homeowner's consent. (*People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469]; *People* v. *Caritativo*, 46 Cal.2d 68 [292 P.2d 513].) In this case the officers relied on the consent only to gain admission to the main building; and relied on information later obtained to justify entry into defendant's room.

There is no distinction, helpful to the appellant, between this

case and that of *People* v. *Bock Leung Chew,* 142 Cal.App.2d 400 [298 P.2d 118] (hearing denied by the Supreme Court) wherein the trial court's order granting a motion under the provisions of Penal Code, section 995, was reversed. There and here the defendant lived in a room and the officer smelled opium, whereupon he entered without a warrant and found some yen shee. In both cases the information possessed by the officers before smelling opium would have been insufficient to justify an entry, search or arrest.

In this case we have the additional element of an anonymous tip, and the presence of narcotic paraphernalia on the dresser actually seen by the witness on looking through an open door before he ever made any attempt to enter the room. The officer's conduct was reasonable under the circumstances when we find that (1) he had heard from an undisclosed source someone was using dope in room 42; (2) He actually smelled opium coming from the room immediately before going in; and in like manner (3) he saw narcotic equipment there on the dresser.

Appellant relies mainly on *People* v. *Thymiakas,* 140 Cal. App.2d 940 [296 P.2d 4], claiming the law and facts to be the same. This is true only up to a certain point and that point is somewhere in time after entry into the rooming house and before coming near to room 42. In the Thymiakas case the officers neither smelled nor saw anything that would lead a reasonable person to believe that a violation of the law was taking place in the room. They went to the door of the room and with a key they had gotten from the manager, unlocked the door which failed to open because of the night chain. Thereupon, the officers banged on the door, announced they were officers and demanded entrance. The door, not being opened, they forced their way in, in a matter of a few seconds from the time they unlocked the door. The cases are dissimilar.

No error appearing in the record, the order denying appellant's motion for a new trial and the judgment are, and each is affirmed.

Dooling, Acting P. J., and Kaufman, J., concurred.