[Civ. No. 34032. Second Dist., Div. Five. Apr. 21, 1969.]

JOHN CLAYTON FRAHER et al., Petitioners, v. THE
SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent; THE PEOPLE, Real Party in Interest.

Marvin Gross for Petitioners.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Real Party in Interest.

ALARCON, J. pro tem.*—Petitioners seek a peremptory writ of prohibition pursuant to Penal Code section1538.5, subdivision (i) on the ground that the evidence obtained against them was the product of an unreasonable search and seizure. The petitioners sought to suppress certain evidence of narcotics seized after a search of petitioners' home.

The evidence presented to the trial court at the special hearing pursuant to Penal Code, section 1538.5 revealed that Officer Figelski of the Los Angeles Police Department observed a report pinned on the bulletin board a couple of days prior to October 5, 1968, to the effect that sales of heroin were taking place from a particular address on Tarzana Drive, and

---

*Assigned by the Chairman of the Judicial Council.

that a man, woman, and small child lived there. The officer presumed that the information contained in the report was from some anonymous complaint which had been called in. Figelski, in the company of two other officers, went to that address at 11:45 p.m. on October 5, 1968. So far as Figelski knew, there had been no police surveillance of the house. Upon looking through a front window, Figelski observed that the lights were on and that a man and woman were inside, apparently asleep. In an alcove located across the living room, he saw what appeared to be a portion of a water pipe of a type which he had previously encountered in connection with marijuana cases. This type of pipe is used to smoke marijuana. The pipe was resting on the third shelf of a bookshelf in the alcove, which was adjacent to an aquarium.

Figelski knocked on the front door several times "fairly hard," and announced that he was a police officer. The door opened as a result of the force of the knocking, and Figelski directed the persons inside to wake up. Petitioner John Clayton Fraher came to the door. Prior to the arrival of Figelski at the address, no identification of the persons who resided there was obtained. Officer Figelski identified himself as a police officer, showed his badge, and said he would "like to talk to [petitioner] concerning a narcotics complaint." Fraher replied, "Sir, come on in," or "Sure, come on in." The appearance of the defendants did not suggest that either of them was "under the influence of anything." Figelski entered, and was promptly followed by one of the other officers. Figelski proceeded directly to the water pipe, picked it up, and smelled an ordor of marijuana. At this time it was seen that the hoses used with the pipe were not attached. He also observed what he concluded to be not recently burned marijuana debris in the bowl of the water pipe. At this time the petitioners were arrested for possession of marijuana, and a search was made of the house. Evidence consisting of narcotics other than the debris contained in the water pipe was seized pursuant to this search. It is the subsequently found evidence which is sought to be suppressed; there was insufficient debris to conduct a chemical analysis of the substance found in the water pipe. The officers had no warrant of arrest or search.

## PROBLEM

The petitioners contend that no reasonable cause existed for their arrest prior to the seizure of the water pipe by Officer Figelski. They argue that if the water pipe and its contents

were products of an unreasonable search and seizure then the evidence which was seized after the arrest of the petitioners is inadmissible as a fruit of the previous alleged violation of the petitioners' constitutional rights. After a review of the evidence presented at the special hearing, pursuant to section 1538.5 of the Penal Code and the oral findings of the trial judge, we have concluded that the police had reasonable cause for the arrest of the petitioners prior to the seizure of the water pipe and, therefore, the searches and seizures which followed were reasonable under the Fourth Amendment.

## DISCUSSION

.Since Officer Figelski had no warrant for arrest or search we must look to the information available to him prior to the seizure of the water pipe to determine if there was reasonable cause for the arrest of the petitioners. Prior to going to the petitioners' residence, Officer Figelski had received information from an anonymous source that someone residing at the petitioners' home was selling heroin. Reasonable cause for an arrest may be based on hearsay information and is not limited to evidence which would be admissible at a trial on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535].) However, if the information is obtained from an anonymous informer it cannot be considered as reasonable cause for an arrest unless other evidence is presented to the court to justify the conclusion that reliance on the information was reasonable. Reliance on anonymous information may be justified by evidence obtained through the personal observations of the police. (*Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36].) Such independent evidence need not itself constitute reasonable cause to make an arrest. (*People* v. *Prewitt,* 52 Cal.2d 330 [341 P.2d 1].)

In this case, acting on the anonymous information, Officer Figelski and his fellow officers went to the petitioners' residence to seek an interview concerning the reported narcotics violations. It is not unreasonable police conduct to seek an interview with the person accused of criminal activity. (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852] ; *People* v. *Padilla,* 240 Cal.App.2d 114 [49 Cal.Rptr. 340].) Officer Figelski observed the water pipe by looking through the front window of the petitioners' residence. "[L]ooking through a window does not constitute an unreasonable search. . . ." (*People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855] ; *Biclicki*

v. *Superior Court*, 57 Cal.2d 602, 607 [21 Cal.Rptr. 552, 371 P.2d 288]; *People* v. *Garcia*, 248 Cal.App.2d 284, 287 [56 Cal.Rptr. 217]; *People* v. *Willard*, 238 Cal.App.2d 292, 297 [47 Cal.Rptr. 734].)

 Officer Figelski was qualified as an expert in the investigation of narcotics cases on the basis of police academy training, academic studies at "L.A. Valley College," the reading of numerous text books on narcotics and apprenticeship under experienced officers in the field of narcotics. He also testified to making numerous arrests for narcotics violations. In addition, he has worked as an undercover officer during which time he not only purchased narcotics but also saw narcotics used and administered. After detailing his qualifications and experience, Officer Figelski was permitted to testify as an expert that the water pipe he observed through the front window was of the type used to smoke marijuana.

At the end of the special hearing, the trial judge reviewed the evidence and made oral findings of fact prior to denying the petitioners' motion to suppress. The court expressly found that when Officer Fegelski first observed the water pipe through the front window he believed it was used for smoking marijuana.[1]

The possession of any device, contrivance, instrument, or paraphernalia used for smoking marijuana is a crime. (§ 11555 of the Health & Saf. Code.)[2] Whether an object is a device, contrivance, instrument or paraphernalia used for the smoking of marijuana is a question of fact. To determine the existence of a fact the trier of fact may rely on the opinion testimony of expert witnesses concerning a subject matter which is sufficiently beyond common experience (Evid. Code, § 801) although the opinion embraces the ultimate issue to be decided. (Evid. Code, § 805.) Thus, on a trial for the possession of bookmaking paraphernalia a police officer with experience in the manner in which bookmaking is con-

---

[1]In summarizing his findings the trial judge stated: ". . . we must put ourselves in the shoes, more or less, of an officer who goes out to the scene where he believes to be a place where narcotics are sold, used, or possessed. He has information, anonymous, but as it turns out to be there is evidence of a sale or possession of narcotics or contraband. His state of mind then becomes one of suspicion. He approaches the defendant's home, sees in the window in his mind what he believes is a water pipe. To him a water pipe means just one thing. A water pipe is used for smoking contraband, marijuana, hashish, or some other illegal type of substance which is usually smoked."

[2]"It is unlawful to possess an opium pipe or any device, contrivance, instrument or paraphernalia used for unlawfully injecting or smoking a narcotic." Health and Safety Code section 11555.

ducted may testify that certain documents and materials constitute bookmaking paraphernalia. (*People* v. *Hinkle,* 64 Cal. App. 375 [221 P. 693] ; *People* v. *Newman,* 24 Cal.2d 168 [148 P.2d 4, 152 A.L.R. 365] ; *People* v. *Cohn,* 94 Cal.App.2d 630 [211 P.2d 375].) The opinion of a police officer, without medical training, that a minor appeared to be under the influence of narcotics has been held to be sufficient to establish the corpus delicti in a prosecution for the illegal furnishing of heroin to a minor where the officer qualified as an expert because of his special knowledge of the narcotics' field through training and field experience. (*People* v. *Mack,* 169 Cal.App.2d 825 [338 P.2d 25].)

Here we are not called upon to decide whether a conviction for a violation of section 11555 of the Health and Safety Code could be sustained based solely on the testimony of Officer Figelski that in his opinion the water pipe was a device used for the smoking of marijuana.

The narrow question presented by this petition is whether reasonable cause for the arrest of the petitioners existed from the moment Officer Figelski saw the water pipe because of his experience and training and his expert opinion that the water pipe was a device used for smoking marijuana.

Section 836 of the Penal Code provides in pertinent part: "A peace officer may . . . without a warrant, arrest a person: 1 Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence."

Reasonable cause refers to "evidence which inclines the mind to believe, but leaves some room for doubt." (*People* v. *Ingle,* 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577].) Reasonable cause for an arrest need not be established by proof beyond a reasonable doubt.

If reasonable cause exists for an arrest the fact that the arrested person is later found not guilty of the specific charge for which he was arrested does not affect the legality of the arrest nor make unreasonable a search and seizure made as an incident to such arrest. (*People* v. *Burgess,* 170 Cal. App.2d 36 [338 P.2d 524] ; *Coverstone* v. *Davies,* 38 Cal.2d 315 [239 P.2d 876].)

To determine if the police acted with reasonable cause "the court looks only at the facts and circumstances presented to the officer at the time he was required to act." (*People* v. *Murphy,* 173 Cal.App.2d 367, 377 [343 P.2d 273].)

Reasonable cause for an arrest may be based on the

opinion of the arresting officer that a crime is being committed in his presence based upon his prior experience and specialized training in the investigation of narcotics cases. (See *People* v. *Harris,* 62 Cal.2d 681, 683 [43 Cal.Rptr. 833, 401 P.2d 225].)

Whether Officer Figelski testified truthfully that when he first saw the water pipe he believed that it was a type of device used for the smoking of marijuana is a matter of credibility which was resolved in the officer's favor by the trial judge. To warrant the rejection of Officer Figelski's testimony concerning his opinion, this court would have to find that it was inherently improbable or that its falsity was apparent. (*People* v. *Huston,* 21 Cal.2d 690 [134 P.2d 758].)

There is substantial evidence in the record before us of the officer's qualifications, training, and experience to support the trial judge's conclusion that Officer Figelski had reasonable cause to arrest the petitioners for a violation of section 11555, after seeing the water pipe through the front window.

The fact that the seizure of the water pipe occurred prior to the arrest of the petitioners does not make the arrest unlawful. Where reasonable cause for an arrest exists, a search made as an incident to an arrest is not unreasonable merely because it precedes rather than follows the arrest. (*People* v. *Torres,* 56 Cal.2d 864 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Hammond,* 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289].)

If the examination of the water pipe by the officer was a search then it was a reasonable search because reasonable cause existed for the arrest of the petitioners at the time the water pipe was seized.

In view of our conclusion that reasonable cause existed prior to the touching or seizure of the water pipe, it is not necessary for this court to decide the interesting question as to whether the picking up of an object in plain view to smell it and look at it more closely is a search under the Fourth Amendment.[3]

---

[3]From the testimony of Officer Figelski, it would appear that only the exterior of the pipe was in open and plain view. The contents of the bowl were not viewed or smelled until the water pipe was picked up and examined. There was no testimony as to whether Officer Figelski could have viewed the interior of the bowl and smelled its contents without touching the water pipe. However, an examination of the photographic exhibits depicting the place where the water pipe was resting at the time it was first observed revealed that it would have been physically possible to view and smell the interior without touching the exterior of the water pipe. A search ''implies some exploratory investigation or an

Officer Figelski had reasonable cause to arrest the petitioners for a violation of section 11555 when the petitioner, John Clayton Fraher, came to the front door. Instead, Officer Figelski asked for and obtained an invitation to enter to talk about the narcotics complaint.

Once lawfully inside the premises, and acting with reasonable cause to believe that a violation of section 11555 was occurring in his presence, it was not an unreasonable search for Officer Figelski to pick up and examine the water pipe which was in plain view in order to confirm or dispel his expert opinion that it was an object used for smoking marijuana. (See *People* v. *Roberts,* 47 Cal.2d 374, 378 [303 P.2d 721].) The odor of marijuana and the presence of burned marijuana debris in the water pipe confirmed his opinion that it was a device used for the smoking of marijuana.

In *Roberts, supra,* the court held that the police had lawfully entered the premises in the belief that someone inside was in distress. Once inside, they observed a table model radio in plain view which fitted the description of property known by the police to have been stolen. The radio was picked up and turned over so as to note the serial number. The court found this conduct to be reasonable. ''Under the circumstances, there appears to be no reason in law or common sense why one of the officers could not pick up the radio and examine it for the purpose of dispeling or confirming his suspicions. The fact that abuses sometimes occur during the course of criminal investigations should not give a sinister coloration to procedures which are basically reasonable.''

The observation of marijuana debris which is insufficient to sustain a conviction is sufficient to constitute reasonable cause to make an arrest and to believe that a larger amount of marijuana may be present in close proximity to the debris. (See *People* v. *Schultz,* 263 Cal.App.2d 110 [69 Cal.Rptr. 293].)

The Fourth Amendment, as interpreted by the United States Supreme Court forbids only *unreasonable* police

---

invasion and quest, a looking for or seeking out . . . for that which is concealed and that the object searched for has been hidden or intentionally put out of the way.'' (*People* v. *West,* 144 Cal.App.2d 214, 219 [300 P.2d 729]; *Bielicki* v. *Superior Court,* 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288].) ''A search implies a prying into hidden places for something that is concealed, something that has been intentionally put out of the way.'' (*People* v. *Alvarez,* 236 Cal.App.2d 106, 112 [45 Cal.Rptr. 721].) The Fourth Amendment does not prohibit the seizure of evidence ''which is readily visible'' and ''accessible'' to the police. (*People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721].)

conduct in making a search and seizure. ''There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances,'' (*Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357 [75 L.Ed. 374, 51 S.Ct. 153]) and ''on the total atmosphere of the case.'' (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

The totality of the circumstances of this case, known to the police prior to the arrest, was sufficient to constitute reasonable cause to believe that a crime was being committed in their presence.[4] We can find no police misconduct of a constitutional dimension from the record before this court. The trial judge correctly denied the motion to suppress.

The petition for a peremptory writ of prohibition is denied. The alternative writ heretofore issued is discharged.

Stephens, Acting P. J., and Aiso, J., concurred.

A petition for a rehearing was denied May 9, 1969, and petitioners' application for a hearing by the Supreme Court was denied June 18, 1969.

---

[4]From these facts it might also be argued that the arrest of the petitioners was lawful on the grounds that the violation of section 11555 in the presence of the police also constituted sufficient independent corroboration of the anonymous informer's report as required by *Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36.]