[Crim. No. 3169.   Fourth Dist., Div. Two.   Sept. 2, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED ORTIZ, Defendant and Appellant.

2

James L. Kellam, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Plaintiff and Respondent.

GARDNER, J. pro tem.*—The defendant was convicted of possession of marijuana and appeals from the judgment of conviction.

In the evening of January 5, 1967, Deputy Wilcox of the Riverside County sheriff's office received a long distance call from a Mr. Ludwig who stated that he was in Texas on business. Mr. Ludwig told Deputy Wilcox that he owned a house at 77-060 Indiana Street in Palm Desert; that he knew there were some people staying at the house; that he had given no one permission to be in the house. He requested that the occupants of the house either be arrested or removed. He said that the deputy could pick up the key from a Mrs. Gamble, a neighbor, who was supposed to be taking care of the house. Deputy Wilcox knew that Mr. Ludwig had previously lived at 77-060 Indiana Street.

Thereupon, Deputy Wilcox picked up the key from Mrs. Gamble and gave it to Sgt. Rutledge of the Riverside County sheriff's office.

---

*Assigned by the Chairman of the Judicial Council.

On January 5, 1967, at approximately 9 p.m. Sgt. Rutledge and some other officers went by the house, noticed nothing unusual or any vehicles near the residence so did not stop.

At about 3:25 p.m. on January 6, 1967, Sgt. Rutledge accompanied by Deputies Biggs and Jones returned to the residence. This time there was a Volkswagen parked in the driveway. Rutledge and Biggs entered through the front of the house using the key. Jones entered through a sliding glass door at the rear. They discovered the defendant and two other persons inside. Biggs asked the defendant what they were doing there and the defendant stated that Bob Ludwig, son of the Mr. Ludwig who had called the officers, had given him permission to be there; that he had lived there five months; that it had been two weeks since Bob Ludwig had been there. Biggs asked the defendant if he knew that Bob Ludwig had been ordered to move out of the residence by his father.

Biggs then advised the three persons present that they were trespassers and placed them under arrest for that offense. He properly advised them of their constitutional rights and the defendant stated that he was willing to discuss the matter. He pointed out the bedroom he occupied and the officers went to that room and found a water pipe filled with water and with hoses on the end of it. He testified that it was the type of water pipe used for smoking. After finding the water pipe the defendant was placed under arrest for possession of marijuana.

The officers then searched the defendant and found marijuana debris in his shirt pocket. They also found marijuana debris in the pocket of another shirt in the room. The defendant said the shirts were his.

The officers continued the search and found 27 marijuana cigarettes in the bread box in the kitchen.

They also found a piece of paper with instructions to "turn off the lights, stop the mail, household instructions."

During the search 12 or 13 visitors arrived at the house. Nine of them were arrested. The reason for these arrests does not appear in the record.

The defendant testified that he was in the residence with two others when the officers arrived; that Bob Ludwig had invited him to live at the house; that as far as he knew Bob Ludwig was the owner; that Bob Ludwig had left a week before after giving him instructions about turning off the utilities; that on January 6 he had had the electricity turned off and had packed and was going to leave the next day. He

didn't know where Bob Ludwig was. He denied telling the officers that he was the only one who had worn the shirts and said that others wore his clothes. Other witnesses called by the defense so testified. The defendant said that the water pipe didn't belong to him; that he didn't know there was marijuana in the house; that he had smoked marijuana cigarettes a year or so before, but not since; that he didn't know how the 12 people who were later arrested happened to come over to that house; that he wasn't expecting anyone; that he didn't know that there was to be a marijuana party at the house.

The defendant does not challenge the sufficiency of the evidence to justify his conviction but makes the following three contentions: 1) The officers violated Penal Code section 844 when they entered the house, 2) The officers did not have probable cause to arrest him for trespassing, 3) The arrest for trespassing was a subterfuge to obtain evidence in connection with another offense.

I

The officers did not violate Penal Code section 844 when they entered the house.

The owner's consent obviated any need to comply with that section. The absent owner called the sheriff's office to request the arrest or removal of trespassers living in his house and told them where they could get a key to effect this purpose. This the officers did. From these facts it would appear that the officers had reasonable cause to believe they had the lawful owner's consent to enter. *People* v. *Chong Wing Louie,* 149 Cal.App.2d 167, 169 [307 P.2d 929] stands for the proposition that the possession of a key by police officers in the absence of contrary evidence will corroborate hearsay evidence showing the owner's express consent to enter.

When a lawful owner requests police to enter his house and gives them a key to do so compliance with section 844 is unnecessary.

The defendant makes much of the dearth of information available to the police officers as a result of Mr. Ludwig's call. Reason and common sense would indicate that if citizens are going to rely on police officers to protect their property, it is not necessary for the police to file a quiet title suit to ascertain ownership whenever a property owner calls the police by telephone to check on his property. All that is required is a reasonable good faith belief that the caller had the authority

to consent to enter. The call plus the key afford the officers basis for a reasonable good faith belief in this case.

Since the officers had no reason to believe that there would be any lawful occupant in the house it was also entirely reasonable for them to conclude that any person living inside the house was a trespasser. Penal Code section 844 is not to be used to protect a trespasser's right to privacy in someone else's home. A trespasser—or a burglar—cannot make another man's home his castle. As Chief Justice Traynor said in a discussion of Penal Code section 844 in *People* v. *Rosales,* 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489] "*Every householder,* the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house." (Italics added.) When police officers have reasonable cause to believe that persons within a house are either trespassers or burglars we do not construe these individuals as *householders* entitled to the protection of Penal Code section 844.

## II

The arrest of the defendant for trespassing was lawful.

■ Defendant's attack on the arrest for trespass is two-fold: (1) that the phone call from Texas did not furnish probable cause for a trespass arrest because the home owner was an untested and unreliable informant, and, (2) if the officers had probable cause to arrest for trespass based on this call, that probable cause was vitiated when the defendant told them he was living in the house with the permission of the owner's son.

Insofar as the first contention is concerned, it is well established that a citizen who purports to be a victim of a crime is a reliable informant even though his reliability has not been previously tested. (*People* v. *Gardner,* 252 Cal.App.2d 320, 324-326 [60 Cal.Rptr. 321].) The telephone call plus the key plus the information the officers had that Mr. Ludwig did live at the address was enough for the officers to reasonably conclude that whomever they found in the house was there without the owner's consent. Thus, when they discovered the defendant in the house they had probable cause to believe that a misdemeanor was being committed in their presence. (Pen. Code, § 836, subd. 1.) As to the defendant's story that Ludwig's son had given him consent, even if that story were true it would not destroy the reasonable cause to effect the arrest. It might be a defense at a trial on a trespass charge but the

officers were not required to believe it. If the police officers were required to believe every exculpatory story made by a suspect at the time of his arrest there would be very few arrests.

## III

The arrest for trespass was not a subterfuge to try to secure evidence of a narcotic violation.

This theory was never advanced to the trial level. Had it been, the trial court could have made a determination as to whether or not this was a legitimate arrest for trespass with a fortuitous side effect of a narcotic prosecution or as defendant's appointed counsel now says, ''A glaring subterfuge to try to secure evidence of narcotics violation.''

The defendant now contends ''the first line narcotics detectives for the County of Riverside (a contention sadly lacking in substance in the record) organized and executed an excellent narcotics investigation which proved quite fruitful but that fruit was poisoned by its very planning because the entry of the premises was a subterfuge, based upon an ill conceived arrest for a technical violation, based upon information which was hearsay from Texas, upon hearsay from Deputy Wilcox, upon hearsay from Detective Rutledge, upon hearsay to Detective Biggs.'' Perhaps so. Perhaps the officers had a tip that a big narcotics party was going to take place at 77-060 Indiana Street that night. Perhaps they invented the call from Mr. Ludwig, conceived Mrs. Gamble out of the whole cloth and cut their own key. All of this is purely speculative. Based on the record before us the entry was legal and the arrest was legal. If the defendant wished to present his present theory he should have done so on the trial level.

At the trial level defense counsel raised no objection on the ground that arrest for trespass was a subterfuge to collect evidence for possession of marijuana.

■ Questions related to the admissibility of evidence will not be viewed on appeal absent a specific and timely objection at trial on the ground sought to be urged on appeal. (Evid. Code, § 353; *People* v. *DeSantiago,* 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Rodriquez,* 274 Cal.App.2d 770-775 [79 Cal.Rptr. 240]; *People* v. *Soto,* 262 Cal.App.2d 180, 184 [68 Cal.Rptr. 500]).

■ What the record does show is that a search incident to an arrest for one crime turned up evidence of another crime. It is well established that the fact that reasonable search inci-

dent to lawful arrest for one crime yields evidence of another crime does not in and of itself render the evidence inadmissible. (*Harris* v. *United States,* 331 U.S. 145, 155 [91 L.Ed. 1399, 1408, 67 S.Ct. 1098]; *People* v. *Robinson, supra,* 62 Cal.2d 889, 895-896 [44 Cal.Rptr. 762, 402 P.2d 834].)

While appellant makes no issue of the right of the officers to arrest him for possession of marijuana based upon the mere finding of a water pipe, the Attorney General commendably brings the matter to the attention of this court for determination.

The Attorney General approaches this issue from two standpoints:

(1) That the discovery of the water pipe gave the sheriff's deputies probable cause to arrest appellant for possession of marijuana.

The Attorney General cites as his authority for this statement the case of *Fraher* v. *Superior Court,* 272 Cal.App.2d 155 [77 Cal.Rptr. 366]. However, in the *Fraher* case the officer established his qualifications as an expert and testified that the water pipe was of the type used to smoke marijuana. Here, the only testimony was that "it was the type of water pipe used for smoking." Also, in the *Fraher* case the officer picked up the water pipe, smelled it and detected the odor of marijuana—all lacking in this case.

While it has become a matter of public knowledge that water pipes are used to smoke marijuana, we doubt that the mere possession of such an object, standing by itself, provides sufficient grounds for an arrest for possession of marijuana. However, had a timely objection been made (see below) the issue would have been properly presented to the court and it is entirely possible that the prosecution could have supplemented the record a la *Fraher* to support the arrest. This leads us to the Attorney General's second contention.

(2) That the appellant is precluded from raising any issue with regard to this second arrest in this court because he did not make a specific objection to the second arrest in the trial court. (Evid. Code, § 353; *People* v. *DeSantiago, supra,* 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Robinson, supra,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Rodriquez, supra,* 274 Cal.App.2d 770, 775 [79 Cal.Rptr. 240]; *People* v. *Soto, supra,* 262 Cal.App.2d 180, 184 [68 Cal.Rptr. 500].)

With this contention we agree. Trial counsel made a "standing objection to the introduction of any of the articles

found at the premises based upon what took place out of the presence of the jury." While a "standing objection" has validity as a useful tool in conserving trial time, once a specific objection has been made and ruled on and the rest of the evidence flows naturally from that ruling, we do not feel that such a blanket objection under the facts of this case properly placed before the court the specific issue to be determined by the court. (Witkin, Cal. Evidence (2d. ed. 1966) § 1294, pp. 1197-1198.) Had an objection been timely made and so stated as to make clear the specific ground of the objection, it is, as stated above, entirely possible that the prosecution could have produced evidence to satisfy the court as to the validity of the second arrest. This was not done, thus the issue of the validity of the second arrest was never presented to the trial court and the appellant is now precluded from raising this issue on appeal.

It is obvious that the search which disclosed the marijuana violated the test of *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], wherein the courts limited the scope of searches incident to valid arrests to "the person arrested and the area within his reach." However, we believe that this rule should be given only prospective application to searches conducted after the date of that decision (June 23, 1969). (See *Desist* v. *United States* (1969) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030].)

Judgment affirmed.

Kerrigan, Acting P. J., and Tamura, J., concurred.