[Civ. No. 21524. Fourth Dist., Div. Two. Dec. 29, 1980.]

MUSIC PLUS FOUR, INC., Plaintiff and Respondent, v.
ROBERT BARNET, as Chief of Police, etc., et al., Defendants and
Appellants.

**COUNSEL**

Paul H. Morgan, City Attorney, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and William R. Weisman, Deputy Attorneys General, Todd & Siegel, John Sanford Todd, City Attorney (Lakewood), Thomas Haas, City Attorney (Fairfield), R. R. Campagna, City Attorney (Costa Mesa), P. Lawrence Klose, City Attorney (Petaluma), J. Dennis Crabb, City Attorney (South Lake Tahoe), David E. Schricker, City Attorney (Redwood City); Susan W. Case, Assistant City Attorney, Elwyn L. Johnson, City Attorney (Modesto), Allen Grimes, City Attorney (Atascadero), Robert W. Parkin, City Attorney (Long Beach), Jerome F. Coleman, City Attorney (Burlingame), John Woodhead, City Attorney (Riverside), William H. Keiser, City Attorney (Laguna Beach), Furman B. Roberts, City Attorney (Orange), James P. Aynes, Deputy City Attorney, Harvey E. Levine, City Attorney (Pleasanton), Allen E. Sprague, City Attorney (Fremont), Lagorio,

Heneke & Madden (Los Altos), Constance K. Heneke, Richard J. Moore, County Counsel (Alameda), Peter H. La Chapelle, Deputy County Counsel, James B. Orton, City Attorney (Santa Maria), Gail Hutton, City Attorney (Huntington Beach), William S. Amsbary, Assistant City Attorney, and John K. Van de Kamp, District Attorney (Los Angeles), as Amici Curiae on behalf of Defendants and Appellants.

Caton & Glazer and Robert Stanley Florey III for Plaintiff and Respondent.

---

OPINION

MORRIS, J.—This is an appeal from a preliminary injunction issued by the Superior Court of Orange County, enjoining enforcement of ordinance No. 1878 of the City of Westminster. Defendants and appellants are representatives of the City of Westminster charged with the responsibility of enforcing the ordinance.

The ordinance, adopted April 24, 1979, by the City of Westminster, requires the exclusion of minors from any room wherein are sold or displayed "for the purpose of sale, any device, contrivance, instrument or paraphernalia for smoking or injecting or consuming marijuana, hashish, PCP, or any controlled substance, as defined in the Health and Safety Code of the State of California, ... as well as roach clips, and cigarette papers and rollers designed for the smoking of the foregoing."[1]

---

[1]The ordinance amended Westminster Municipal Code by adding article III, chapter 5, part IX, sections 3590, 3591, 3592 and 3593 to read as follows:

"PART IX. Sale and Display of Narcotic and Other Paraphernalia

"3590. MINORS No owner, manager, proprietor in charge of any room in any place of business selling, or displaying for the purpose of sale, any device, contrivance, instrument or paraphernalia for smoking or injecting or consuming marijuana, hashish, PCP, or any controlled substance, as defined in the Health and Safety Code of the State of California, other than prescription drugs and devices to ingest or inject prescription drugs, as well as roach clips, and cigarette papers and rollers designed for the smoking of the foregoing, shall allow or permit any person under the age of eighteen (18) years to be, remain in, enter or visit such room unless such minor person is accompanied by one of his or her parents, or by his or her legal guardian.

"3591. MINORS—EXCLUDED A person under the age of eighteen (18) years shall not be, remain in, enter or visit any room in any place used for the sale, or displaying for sale, devices, contrivances, instruments or paraphernalia for smoking or injecting marijuana, hashish, PCP, or any controlled substance, other than prescription drugs

Respondent corporation owns and operates 20 retail stores, one of which is situated in the City of Westminster. Along with phonograph records and tapes, respondent sells at each of its retail stores additional items including, inter alia, a variety of pipes for smoking, including water pipes, wooden pipes, ceramic and metal pipes, metal and decorative clips, otherwise commonly known as alligator clips, small spoons with rings attached which are designed to be worn on neck chains, and all types of cigarette papers.

Prior to enactment of the ordinance, respondent permitted minors to enter its premises and view any and all of the items sold there.

Following adoption of the ordinance, respondent sought and obtained a preliminary injunction enjoining both civil and criminal enforcement of the ordinance. The injunction was granted on the grounds that: The state has preempted the field, and the ordinance is unconstitutionally vague. Respondent contends that the injunction is proper on the following additional grounds: The ordinance constitutes an impermissible regulation of commercial speech in violation of the First Amendment to the United States Constitution; it is not rationally related to a permissible state purpose and thus constitutes a denial of due process; and it violates the respondent's right to equal protection of the law guaranteed by the California and the United States Constitutions.

---

and devices to ingest or inject prescription drugs, including roach clips, and cigarette papers and rollers designed and used for smoking the foregoing, unless such person is accompanied by one of his or her parents, or his or her legal guardian.

"3592. SALE AND DISPLAY ROOMS A person shall not maintain in any place or business to which the public is invited the display for sale, or the offer to sell, of devices, contrivances, instruments or paraphernalia for smoking or injecting marijuana, hashish, PCP, or any controlled substance, other than prescription drugs and devices to ingest or inject prescription drugs, including roach clips, and cigarette papers and rollers designed and used for smoking the foregoing, unless within a separate room or enclosure to which minors not accompanied by a parent or legal guardian are excluded. Each entrance to such a room shall be sign posted in reasonably visible and legible words to the effect that narcotic paraphernalia are being offered for sale in such a room, and minors unless accompanied by a parent or legal guardian are excluded.

"3593. SAME, NUISANCE The distribution or possession for the purpose of sale, exhibition, or display in any place of business from which minors are not excluded as set forth in this section, and where devices, contrivances, instruments or paraphernalia for smoking or injecting marijuana, hashish, PCP, or any controlled substance, other than prescription drugs, including roach clips, and cigarette papers and rollers designed and used for smoking the foregoing, is hereby declared to be a public nuisance, and may be abated pursuant to the provisions of Section 731 of the Code of Civil Procedure of the State of California. This remedy is in addition to any other remedy provided by law, including the penalty provisions applicable for violation of the terms and provisions of this Code."

*Preemption*

■ Article XI, section 7 of the California Constitution provides that a city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

A local ordinance may be in conflict with state law even where there is no direct conflict, if the state has fully occupied the field of the legislation. "It is settled that a local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by general law. [Citations.] Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication. [Citations.] If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly characterized as a 'municipal affair.' [Citations.]" (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681].)

■ Respondent contends that the ordinance is in conflict with the California Uniform Controlled Substances Act. (Health & Saf. Code, §§ 11000-11651.)[2] Respondent argues that by adoption of the Controlled Substances Act the state has preempted the field of regulation of drugs and drug paraphernalia, thereby excluding any otherwise permissible municipal regulation of drug related activities.

---

[2]Effective January 1, 1981, Health and Safety Code section 11364.5 will provide in pertinent part as follows: "(a) Except as authorized by law, no person shall maintain or operate any place of business in which drug paraphernalia is kept, displayed or offered in any manner, sold, furnished, transferred or given away unless such drug paraphernalia are completely and wholly kept, displayed or offered within a separate room or enclosure to which persons under the age of 18 not accompanied by a parent or legal guardian are excluded. Each entrance to such a room or enclosure shall be signposted in reasonably visible and legible words to the effect that drug paraphernalia are kept, displayed or offered in such room or enclosure and that minors, unless accompanied by a parent or legal guardian, are excluded.

"(b) Except as authorized by law, no owner, manager, proprietor or other person in charge of any room or enclosure, within any place of business, in which drug paraphernalia is kept, displayed or offered in any manner, sold, furnished, transferred or given away shall permit or allow any person under the age of 18 years to enter, be in, remain in or visit such room or enclosure unless such minor person is accompanied by one of his or her parents or by his or her legal guardian."

Subdivision (d) defines "drug paraphernalia" and lists numerous items included within the definition.

(Stats. 1980, ch. 505, § 1, p. 1060.)

In our review of the existing provisions of the Uniform Controlled Substances Act, we find no basis for respondent's claim of express conflict between the statute and the ordinance. Respondent contends that two provisions of the act are directly related to matters regulated in the ordinance. Section 11353 makes it unlawful for an adult to solicit or encourage any minor to violate certain specified provisions of the act, and section 11364 makes it unlawful to possess an opium pipe or any device, contrivance, instrument or paraphernalia used for injecting or smoking certain specified controlled substances.[3]

With respect to section 11353, respondent argues that both the ordinance and the statute are aimed at regulating adult behavior which would induce or encourage possession or use of drugs by minors. Moreover, respondent contends that, since the statute excludes marijuana, the ordinance is in direct conflict with the statute. On the same basis respondent concludes that the conflict between section 11364 and the ordinance is even more pronounced since under the statute it is no longer unlawful to possess a device used for smoking marijuana, whereas a violation of section 3591 of the ordinance subjects the minor to misdemeanor penalties.

There is no conflict. The sale of certain enumerated drugs is a crime under state law, as are the use and possession of certain drugs and drug paraphernalia. Section 11353 refers to adult activity specifically directed at inducing a minor to violate these laws. Section 11364 is one of those laws. The ordinance, on the other hand, does not purport to regulate either the use or sale of controlled substances or paraphernalia, but rather to regulate the operation of local retail businesses frequented by minors, so that the operation of the business does not encourage drug use by minors.

Implicit in the ordinance is the recognition that the items specified are those which can be legally possessed and sold by the store owner. Also implicit in the ordinance is the recognition of the special vulnerability of youth to exploitation by those who help make their living by supplying drug-related devices to the public. Thus, the ordinance does not prohibit or even restrict the sale of the listed items, but simply regulates the display for purposes of sale by prohibiting the viewing of drug

---

[3]All statutory references are to the Health and Safety Code unless otherwise stated. Prior to 1975, marijuana was one of the substances specified. It was deleted by the 1975 amendment to section 11364 (Stats. 1975, ch. 248, § 6, p. 645).

paraphernalia by minors, except when accompanied by a parent or guardian.

Clearly the ordinance does not directly conflict with the existing general law, since it neither contradicts nor duplicates state law.[4] It is therefore necessary to examine the general law to determine whether it establishes a general scheme that would preclude local regulation of business establishments for purposes of protecting minors from exposure to displays of devices designed for drug use.

■ The question whether the Legislature intended to fully occupy an entire field of activity so as to preclude local regulation under the city's police power must be answered in the light of the facts and circumstances surrounding each case. However, analysis of the many prior decisions on the subject of state preemption indicates that the doctrine is inapplicable unless: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." (*In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], overruled on another point in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137].)

■ Applying this analysis to the subject ordinance, it is at once apparent that the subject matter is not fully covered by general law, and the coverage does not indicate that it has become exclusively a matter of state concern. As respondent emphasizes, although there was once almost complete proscription of the possession, sale, and use of drug paraphernalia, including the kind of paraphernalia described in the or-

---

[4]While it appears that there will be some duplication when section 11364.5 takes effect in January 1981, section 2 of the new law specifically provides that: "Nothing in this act or any other provision of law shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county or a city and county regulating the sale or display to persons under the age of 18 years of items described in Section 11364.5 of the Health and Safety Code or in Section 306 of the Penal Code." (Stats. 1980, ch. 505, § 2, p. 1063.)

dinance, the amendments to the Uniform Controlled Substances Act decriminalizing the possession of small amounts of marijuana and the possession and sale of paraphernalia for the use of marijuana and certain other substances, has removed every vestige of coverage of the subject matter of the ordinance. Certainly the regulation of the display of such items to minors is not within the subject matter of any general law.

Neither do the provisions of the Controlled Substances Act indicate that the control of the display of such devices to minors is exclusively a matter of state concern. The fact that the possession, sale and use of such items has been decriminalized cannot be interpreted as the expression of a legislative determination that their use should be encouraged, particularly by minors. It was simply a legislative recognition that the laws should be ameliorated as to less aggravated drug offenses.

There is nothing in the general law to suggest a legislative purpose to take over the regulation of local businesses engaged in the exhibition and sale of items which may be legally sold under the general laws.

Moreover, although it is arguable that the subject matter has been partially covered by general law, i.e., section 11364, making unlawful the possession of opium pipes and related paraphernalia for the use of specified substances (not including those covered by the ordinance), there is nothing in the language of such laws to indicate a paramount state concern precluding additional local action. It cannot reasonably be inferred that the failure to outlaw possession of devices for the use of drugs other than those specified in section 11364, indicates a legislative intent to encourage the sale of all other devices to minors. It is implicit in local regulation of businesses that they are engaged in the sale of items that may legally be sold.

Finally, it is ludicrous to suggest that the effect of this ordinance on transient citizens of the state could possibly outweigh the community interest in protecting its children from indiscriminate exposure to commercial exploitation by businesses devoted to the sale of paraphernalia for the use and abuse of drugs, without the consent of the parents or guardians.

In *In re Hubbard, supra,* 62 Cal.2d 119, the California Supreme Court held that the regulation of gambling is within the purview of the city police powers when it did not conflict with specific provisions of the

general law, and where the local regulations had as their purpose only to supplement the state law by additional reasonable requirements.

In *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121 [155 Cal.Rptr. 435], the court held that a news rack ordinance which was narrowly drawn to protect persons from unwilling exposure to explicit sexual material which is likely to be offensive to the unwilling viewer should be viewed as a "time, place and manner regulation," and as such, did not intrude in the state preempted areas of obscenity and proscribed sexual behavior. After reviewing the decisional law the court concluded, "The common thread of the cases is that if there is a significant local interest to be served which may differ from one locality to another then the presumption favors the validity of the local ordinance against an attack of state preemption. [Citation.] Here we deal with an ordinance regulating the use of streets and sidewalks, one both particularly within the realm of local government and one where conditions peculiar to the locality may differ from place to place. The problem of the 'captive' viewer may be quite different in Los Angeles County than it is in Mono or in San Francisco." (At p. 133.)

Similarly, in the case at bench the ordinance is a time, place and manner regulation. It does not prohibit the display or sale of any device; it simply regulates the display of certain devices and drug paraphernalia to minors by requiring that they not be so displayed unless the minor is accompanied by a parent or guardian. Surely this is within a realm of local government where conditions peculiar to the locality may differ from place to place. The local customs, extent of parental control and the degree of sophistication of minors may be quite different in Westminster than they are in San Francisco or Los Angeles. Moreover, a minor who enters a store simply to purchase a record or tape is in a sense a "captive" viewer of drug paraphernalia.

We conclude that the state has not preempted the field of regulation of businesses displaying drug paraphernalia to minors.

### *Vagueness*

The trial court granted the injunction on the additional ground of vagueness based on *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294].) In *Grayned*, the United States Supreme Court stated, "It is a basic principle of due

process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing a fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to '"steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.'" (Fns. omitted.)

■ In determining whether the language of a statute or ordinance is unconstitutionally vague, the test to be applied is one of reasonableness.

The courts have consistently held that lack of precision is not itself offensive to the requirements of due process. The Constitution does not require impossible standards. All that is required is that the language convey sufficiently definite warning as to the proscribed conduct, when measured by common understanding and practices. (*CSC* v. *Letter Carriers* (1973) 413 U.S. 548, 578-579 [37 L.Ed.2d 796, 816-817, 93 S.Ct. 2880].)

In the *Letter Carriers* case, the Supreme Court emphasized that lack of precision and the limitations inherent in the English language itself should not be used to sustain a finding of vagueness, stating as follows: "[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. '[T]he general class of offenses to which . . . [the provisions are] directed is plainly within [their] terms, . . . [and they] will not be struck down as vague, even though marginal cases could be put when doubts might arise.' [Citation.]" (413 U.S. at pp. 578-579 [37 L.Ed.2d at p. 816].)

Applying this standard to an antinoise ordinance, which prohibited persons on grounds adjacent to a school from making any noise or diversion "which disturbs or tends to disturb the peace or good order of such school," the United States Supreme Court upheld the ordinance, stating as follows: "Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted. We do not have here a vague, general 'breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this 'particular context,' the ordinance gives 'fair notice to those to whom [it] is directed.'" (*Grayned* v. *City of Rockford, supra,* 408 U.S. 104, 112 [33 L.Ed.2d 222, 230, 92 S.Ct. 2294], fn. omitted.)

█ If we examine the language of the subject ordinance in the light of its stated purpose, i.e., "To require the exclusion of minors from places where certain paraphernalia is offered for sale," we find that it satisfies any common sense standard of specificity.

Respondent contends that the terms "device," "contrivance," "instrument," and "paraphernalia," even when modified by the phrase "for smoking or injecting or consuming marijuana, hashish, PCP, or any controlled substance," are so broad and imprecise that neither a store owner nor the enforcement officer can know with any certainty which items are included and which are excluded from the coverage of the ordinance.

If those words were isolated, we also would be troubled by their imprecision. However, when the ordinance is read in its entirety, it becomes apparent that respondent has created the imprecision by extracting the words from their contextual definition.

Section 3590 of the ordinance reads in pertinent part as follows: "No owner, manager, proprietor in charge of any room in any place of business selling, or displaying for the purpose of sale, any device, contrivance, instrument or paraphernalia for smoking or injecting or consuming marijuana... as well as roach clips, and cigarette papers and rollers designed for the smoking of the foregoing, shall allow or permit any person under the age of eighteen (18) years to be, remain in, enter or visit such room unless such minor person is accompanied by one of his or her parents, or by his or her legal guardian."

Clearly the proscribed devices are limited by the context to devices *being sold or displayed for sale for the purpose of smoking or otherwise using the specified drugs.* Moreover, we are convinced that no reasonably intelligent person, be it store owner or police officer, would have any difficulty determining whether such devices are being displayed for the purpose of sale for consuming or injecting drugs.

A teaspoon in a room displaying housewares could not reasonably be found to be displayed for the purpose of sale for consuming drugs or narcotics. Conversely, a teaspoon in a record store at least suggests that the display is for sale for some purpose other than eating. Moreover, the display of a teaspoon along with water pipes, roach clips, and cigarette papers specifically designed for smoking marijuana, leaves no doubt about the purpose for which the displayed items are offered for sale.

Even if the language of the ordinance could be interpreted to encompass spoons in a housewares display, normal white cigarette paper in a tobacco store and an antique water pipe in an antique store, we are not required to give the ordinance such a broad construction. To the contrary, the ordinance should be given a narrowed construction to carry out its purpose and intent. In *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636], the California Supreme Court gave a narrowing construction to Penal Code section 647, subdivision (a), which defines as disorderly conduct one "[w]ho solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view." To avoid invalidating the ordinance for vagueness because of the phrase, "lewd and dissolute conduct," the court narrowed the definition to specific acts committed "by a person who knows or should know of the presence of persons who may be offended by the conduct." (*Id.,* at p. 244.)

Similarly, to avoid any question of vagueness in the subject ordinance, we hold that the ordinance is limited in its application by the contextual definition to persons who knowingly display such items for sale for purpose of drug use.

As so limited the ordinance is more specific than the statute from which the language was appropriated. Health and Safety Code section 11364 and its predecessor, section 11555, since its amendment in 1953, have used the language "any device, contrivance, instrument or paraphernalia *used for* unlawfully injecting or smoking" a controlled

substance or narcotic. (Italics added.) The statute penalizes possession of the listed items when used for the proscribed purposes, whereas, the ordinance is directed at the display and sale for such use. That statute has been the subject of prosecutions and has been upheld by implication in numerous appellate court opinions. (See *People* v. *Nickles* (1970) 9 Cal.App.3d 986 [88 Cal.Rptr. 763]; *Fraher* v. *Superior Court* (1969) 272 Cal.App.2d 155, 161 [77 Cal.Rptr. 366], disapproved on another point in *People* v. *Fein* (1971) 4 Cal.3d 747, 755, fn. 3 [94 Cal.Rptr. 607, 484 P.2d 583].)

We hold that the ordinance is not impermissibly vague.

### First Amendment

Respondent also argues that the enforcement of the ordinance may properly be enjoined on the ground that, in the guise of regulatory conduct, it actually prohibits and punishes speech and expression relating to the use of drugs and drug paraphernalia in violation of the First and Fourteenth Amendments of the United States Constitution.

We concede that the ordinance, as we have interpreted it to apply only where the paraphernalia is being sold or displayed for use for smoking, injecting or consuming the various drugs, has the effect of restricting "conduct" which expresses ideas and provides a certain kind of information. To come under the proscription of the ordinance the sale or display must speak. It is displayed "for" use with drugs and narcotics.

Commercial speech is entitled to First Amendment protection. (See *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748, 770 [48 L.Ed.2d 346, 363, 96 S.Ct. 1817].) However, like other forms of speech, the right to engage in commercial speech is not absolute. It is subject to appropriate time, place and manner restrictions. (See *Id.*, at pp. 770-771 [48 L.Ed.2d at pp. 363-364]; *Gluck* v. *County of Los Angeles, supra*, 93 Cal.App.3d 121, 127.)

Moreover, the cases have recognized that the health and welfare of children is of such compelling state concern that it is within the state's power to regulate the sale of pornographic material to children by establishing special standards which were more restrictive than could be constitutionally applied to materials available to adults. (See *Ginsberg* v. *New York* (1968) 390 U.S. 629 [20 L.Ed.2d 195, 88 S.Ct. 1274].)

The *Ginsberg* court stated: "The well-being of its children is of course a subject within the State's constitutional power to regulate, and, in our view, two interests justify the limitations in § 484-h upon the availability of sex material to minors under 17, at least if it was rational for the legislature to find that the minors' exposure to such material might be harmful. First of all, constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' [Citation.] The legislature could properly conclude that parents and others, teachers for example, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility. . . .

"'While the supervision of children's reading may best be left to their parents, the knowledge that parental control or guidance cannot always be provided and society's transcendent interest in protecting the welfare of children justify reasonable regulation of the sale of material to them. It is, therefore, altogether fitting and proper for a state to include in a statute designed to regulate the sale of pornography to children special standards, broader than those embodied in legislation aimed at controlling dissemination of such material to adults.'" (*Ginsberg v. New York, supra,* 390 U.S. 629, 639-640 [20 L.Ed.2d 195, 203-204, 88 S.Ct. 1274].)

The principles enunciated in *Ginsberg* apply with equal force to the regulation controlling the display of drug paraphernalia to children. Government regulation designed to protect children from exploitation by those trafficking in drugs and drug-related products is a goal of the highest priority. We conclude that Westminster Ordinance No. 1878 is reasonably necessary to the accomplishment of this compelling governmental interest, and uses the least restrictive means to achieve that goal. It violates neither the First Amendment nor article I, section 2 of the California Constitution.

*Due Process*

Respondent contends that even if the ordinance is found not to impinge upon First Amendment or other fundamental rights, the ordinance still violates due process principles because it fails to bear a

rational relationship to a valid governmental purpose. ■ We agree that, even in the absence of First Amendment considerations, an ordinance regulating the right to engage in a lawful occupation or business must bear a rational relationship to a valid governmental purpose. (*Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 663 [97 Cal.Rptr. 320, 488 P.2d 648], cert. den. (1972) 404 U.S. 1038 [30 L.Ed.2d 729, 92 S.Ct. 710]; and see *Skaggs* v. *City of Oakland* (1936) 6 Cal.2d 222, 224-225 [57 P.2d 478].) Moreover, the due process clause requires not only that a statute or ordinance have a permissible goal, but also that the means selected have a reasonable relationship to the object sought to be obtained. (*Nebbia* v. *People of the State of New York* (1934) 291 U.S. 502, 537 [78 L.Ed. 940, 54 S.Ct. 505, 89 A.L.R. 1469].)

■ Keeping in mind that a municipality's judgment in adopting legislation under its police power is entitled to great weight, we find that the subject ordinance satisfies due process standards both as to purpose and rational relationship to that purpose.

The purpose is obviously the welfare of the community's children by regulating their exposure, without parental guidance, to commercial exploitation by businesses seeking to expand the drug culture. Respondent even concedes that the prevention or deterrence of drug abuse by minors is a permissible goal. However, respondent contends that the ordinance is not reasonably related to its purpose because "access to specialized 'paraphernalia' is not a necessary prerequisite to or component of drug use," and further that those materials can be found in commonplace, everyday items.

Respondent has again attempted to affect the result by misstating the issue. The issue is not, as respondent implies, whether the ordinance will deter a youngster already intent on drug use from drug abuse. That is in the area addressed by the state law relating to controlled substances. The ordinance is addressed to the problem of the exploitation of impressionable minors by commercial enterprises seeking to increase the demand for drug-related products.

Although there may be no scientific proof that repeated exposure to invitingly displayed implements of drug use will induce a young adolescent to experiment with drugs, there is certainly no proof that it will not. (See *Ginsberg* v. *New York, supra*, 390 U.S. at pp. 637-639 [20 L.Ed.2d at pp. 202-204].) It was at least rational for the municipality

to find that the minors' exposure to such items might be less likely to lead to harmful experimentation if such items were viewed in the presence of parents who could provide mature guidance.

## Equal Protection

 Respondent further contends that the ordinance violates constitutional guarantees of equal protection under both the federal and the California Constitutions because it arbitrarily classifies and selects respondent to be subjected to unequal and burdensome restrictions not imposed on a general class of businesses that stand in the same relation to the subject of the ordinance.

The businesses cited by respondent as being in the same relation to the subject of the ordinance are "[m]edia-related businesses, such as record manufacturers or television networks."

Obviously they are not similarly situated. Respondent has failed to cite any record manufacturer or television network engaged in the business of displaying the proscribed items for sale. If they do, they would fall within the ambit of the ordinance. The mere fact that a recording artist or a TV performer may mention drugs does not place the record manufacturer or television network in the same relationship to the subject of the ordinance as a business engaged in selling and displaying for sale paraphernalia for drug use.

The ordinance satisfies equal protection standards. The judgment enjoining enforcement of the ordinance is reversed.

Kaufman, Acting P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied January 13, 1981, and respondent's petition for a hearing by the Supreme Court was denied March 18, 1981.