[Civ. No. 63380. Second Dist., Div. Four. June 28, 1982.]

BAMBOO BROTHERS, Plaintiff and Respondent, v.
JOHN CARPENTER, as Sheriff, etc., et al., Defendants and
Appellants.

COUNSEL

Kenneth L. Nelson, County Counsel, Robert D. Curiel, Acting County Counsel, and John M. Cohan, Deputy County Counsel, for Defendants and Appellants.

Kitchen & Turpin and David C. Turpin for Plaintiff and Respondent.

OPINION

**ASHMANN, J.*—**This is an appeal from a permanent injunction issued by the Santa Barbara Superior Court, enjoining enforcement of Ordinance No. 3194[1] of the County of Santa Barbara (hereinafter ordinance). Appellants are representatives of the county, charged with the responsibility of enforcing the ordinance. Respondent is the owner of a retail store which sells, among other items, clothing, jewelry, posters, and smoking accessories.

On December 1, 1980, the Board of Supervisors of the County of Santa Barbara enacted the ordinance which regulates the use, possession, delivery, and manufacture of drug paraphernalia; and

---

*Assigned by the Chairperson of the Judicial Council.

[1]The complete ordinance is attached as appendix A.

advertisements promoting the sale of drug paraphernalia. Respondent's complaint for declaratory and injunctive relief alleged that the ordinance is in conflict with and preempted by the general laws of the State of California; is vague and overbroad; and violates respondent's rights under the First Amendment. The trial court ruled in favor of the respondent, without reaching the issue of vagueness or overbreadth. We disagree with the decision of the trial court, and reverse.

### SUMMARY OF THE ORDINANCE

The ordinance was passed due to the concern of the board of supervisors over the proliferation of what are commonly referred to as "head shops," and other establishments engaged in the sale of drug paraphernalia.[2] The board found that these places of business entice young people to abuse harmful and unsafe substances.

The ordinance begins with a definitions section (13A-2) which includes within the meaning of the phrase "controlled substance" marijuana, hashish, PCP and any controlled substances as defined by the Controlled Substances Act (Health & Saf. Code, § 11000 et seq.[3]). That section also defines drug paraphernalia as including all equipment, products and materials of any kind which are used, intended for use, or designed for use, in activities such as planting, cultivating, manufacturing, testing, analyzing, packaging, injecting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the Controlled Substances Act. Twelve examples are provided, such as kits, scales, syringes and pipes, all of which include the requirement that the item be "used," "intended for use," or "designed for use" for specified activities involving controlled substances. It then lists 14 factors to be considered by the court or "other authority" in determining whether an object is indeed drug paraphernalia.

The substantive offenses appear in the next three sections which prohibit the following: Use or possession with intent to use drug

---

[2]This enactment is patterned after the Model Drug Paraphernalia Act (Model Act), drafted by the Drug Enforcement Administration of the United States Department of Justice. In its prefatory note, the Model Act declares that the availability of drug paraphernalia has reached epidemic proportions, resulting in the development of an entire industry which promotes and glamorizes the sale of and illegal use of drugs by adults and children.

[3]All further references are to the Health and Safety Code unless otherwise indicated.

paraphernalia, a violation of which is declared to be an infraction, punishable by fine (13A-3); the delivery, possession with intent to deliver, or the manufacture with intent to deliver drug paraphernalia, knowing, or under circumstances where one reasonably should know that it will be used to do such things as plant or ingest a controlled substance in violation of state law (13A-4); and finally, the advertisement of drug paraphernalia when one knows or reasonably should know the purpose is to promote the sale of drug paraphernalia (13A-5). Violation of sections 13A-4 or 13A-5 is declared to be a misdemeanor.

The paraphernalia is subject to civil forfeiture (13A-6), and an interpretative section sets forth the requirement that each defendant charged must have general intent before a violation may be deemed to have occurred (13A-7).[4]

Punishment for use of drug paraphernalia in connection with possession or sale of under one ounce of marijuana (Health & Saf. Code, § 11357 subd. (b) and § 11360 subd. (b)) is limited to the maximum punishment that may be imposed for those state law violations (13A-8), and section 13A-9 provides for severability.

PREEMPTION

Appellants first contend that contrary to the ruling of the trial court, the ordinance is not preempted by state law. The trial court, in its intended decision concluded that state law "completely and fully" covered the subject matter except in the advertising area, and, since in 1975 the Legislature removed drug paraphernalia for the use of marijuana from the prohibitions of section 11364 (relating to unlawful possession of devices used for smoking certain substances), this indicated an intent to make lawful marijuana related items.

Fundamental to the county's authority to enact this ordinance is article XI, section 7 of the California Constitution, which provides: "A county or city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws"

---

[4]With respect to section 13A-4 dealing with delivery or manufacture, section 13A-7 reads as follows: "... the necessary criminal intent will exist if the defendant charged with a violation thereof actually knew or reasonably should have known that such defendant was aiding or facilitating an act proscribed by Section 13A-4."

■ It is well settled, however, that any local regulation that directly conflicts with a provision of state legislation is to that extent void. (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 856 [76 Cal.Rptr. 642, 452 P.2d 930].) "Conflicts exist if the ordinance duplicates [citations], contradicts [citations], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly characterized as a 'municipal affair.' [Citations.]" *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681].

The state statutes which regulate drug paraphernalia are sections 11364,[5] 11364.5[6] and Penal Code section 308.[7] Both section 11364.5 and Penal Code section 308 permit further local regulation.

■ In our review of these statutes, we find no direct conflict between them and the ordinance. As set forth above, section 11364 regulates the use of drug paraphernalia by adults, but excludes marijuana; section 11364.5 prohibits minors from being in places where drug paraphernalia is displayed; and Penal Code section 308 prohibits the sale of paraphernalia for tobacco or marijuana ingestion to minors. The ordinance, however, attempts to broaden the scope of the state laws by prohibiting use, possession and display to *all* persons, and includes drug paraphernalia relating to marijuana. The obvious intent of the ordinance is to prohibit the entire citizenry from use of drug paraphernalia and to prevent its distribution by those who know the purpose for which it is sold.

---

[5]Section 11364 provides: "It is unlawful to possess an opium pipe or any device, contrivance, instrument or paraphernalia used for unlawfully injecting or smoking (1) a controlled substance specified in subdivision (b) or (c) of Section 11054, specified in paragraph (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055 or (2) a controlled substance which is a narcotic drug classified in Schedule III, IV, or V."

[6]Section 11364.5 requires that any place of business in which drug paraphernalia is kept or displayed must maintain a separate room to which persons under the age of 18 not accompanied by a parent or legal guardian are excluded. Also included are definitions virtually identical to those of the ordinance; certain persons are deemed exempt; and revocation or nonrenewal of the business license or permit is the exclusive remedy.

[7]Penal Code section 308 provides in pertinent part: "(a) Every person, firm or corporation which knowingly sells or gives or in any way furnishes to another person who is under the age of 18 years any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, or any other instrument or paraphernalia that is designed for the smoking or ingestion of tobacco, products prepared from tobacco, or any controlled substance, is guilty of a misdemeanor."

■ We next consider whether the state has established a general scheme that fully occupies the field. As set forth in *In re Hubbard* (1964) 62 Cal.2d 119 [41 Cal.Rptr. 393], the following factors must be considered: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." (*In re Hubbard, supra*, 62 Cal.2d at p. 128.)

■ As recognized in *Music Plus Four, Inc.* v. *Barnet* (1980) 114 Cal.App.3d 113, 123, 124 [170 Cal.Rptr. 419]: ". . . although there was once almost complete proscription of the possession, sale, and use of drug paraphernalia, including the kind of paraphernalia described in the ordinance, the amendments to the Uniform Controlled Substances Act decriminalizing the possession of small amounts of marijuana and the possession and sale of paraphernalia for the use of marijuana and certain other substances, has removed every vestige of coverage of the subject matter of the ordinance."

The inclusion in the ordinance of drug paraphernalia for use with marijuana, the display of it to all persons, and its promotion by advertisement are not within the subject matter of any state law and therefore the subject matter has not been fully covered by general law. Nor do we find an intent on the part of the Legislature to occupy the entire field of use, possession and distribution of drug paraphernalia. We cannot say that the Legislature so intended "unless we adopt the negative type of argument inherent in defendants' contention, that is, that by making specific acts illegal the Legislature intended all other acts of similar character to be of such innocent character that no local authority might adopt a contrary view. To adopt such a view . . . would be to fly in the face of the well-settled doctrine that the use of specific words and phrases connotes an intent to exclude that which is not specifically stated. By limiting the general statutes to regulation or prohibition of specifically enumerated activities, the Legislature did not intend to prevent local authority from legislating on those subjects in regard to which the former are silent." (*In re Hubbard, supra*, 62 Cal.2d at pp. 126-127.)

Moreover, we do not believe the general laws that partially cover the subject matter clearly indicate a paramount state concern that will not tolerate further or additional local legislation. We find nothing in the language of such laws to so indicate; nor do we infer an intent to preclude local action which makes illegal all aspects of the use, display and advertising of items associated with unlawful controlled substances, simply because the Legislature failed to do so.

Finally, the effect of this ordinance on transient citizens does not outweigh the community interest in controlling the use and sale of paraphernalia, and no burden is placed on people coming into the Santa Barbara area to comply. Since the manufacture or delivery section deals only with business people, we assume that they will not be moving their establishments from place to place with great ease. Moreover, prohibiting the use or possession with intent to use, drug paraphernalia to smoke marijuana does not impose any additional burden on the populace. While the possession of small amounts of marijuana has been decriminalized, it still is against the law. (See § 11357, subd. (b).)

Our conclusion is consistent with the results reached in other cases. For example, *In re Hubbard, supra*, 62 Cal.2d 119, upheld the regulation of gambling where there was no conflict with specific provisions of the general law, and where the local regulation had as its purpose supplementing state law by additional requirements. (See also *People* v. *Orozco* (1968) 266 Cal.App.2d 507 [72 Cal.Rptr. 452, 32 A.L.R.3d 1429].)

As was held in *Gluck* v. *County of Los Angeles* (1979) 93 Cal. App.3d 121, 133 [155 Cal.Rptr. 435]: "The common thread of the cases is that if there is a significant local interest to be served which may differ from one locality to another then the presumption favors the validity of the local ordinance against that attack of state preemption. [Citation.]"

This ordinance does not prohibit the display or sale of any device. Instead, it controls the use, delivery, manufacture and advertisement of certain items when coupled with the requisite intent to use the device for an unlawful purpose, and is within the realm of local governmental regulation. (See also *Olsen* v. *McGillicuddy* (1971) 15 Cal.App.3d 897 [93 Cal.Rptr. 530].)

## Vagueness and Overbreadth

In its ruling, the trial court did not consider respondent's assertion that the ordinance is vague and overbroad. However, since respondent raised it both in the court below and in this appeal, we have addressed the issue and conclude that the ordinance withstands this attack.

We begin our analysis by noting that while respondent's attack is phrased in terms of both vagueness and overbreadth, it is actually limited to the concept of vagueness. (See *Village of Hoffman Estates* v. *Flipside* (1982) 455 U.S. 489 [71 L.Ed.2d 362, 102 S.Ct. 1186].)

■ The standard for determining vagueness was set forth in *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294]: "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing a fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to '"steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.'"[8]

These standards are not applied mechanically, but must be reviewed in light of the nature of the enactment. (*Village of Hoffman Estates* v. *Flipside, supra*, 455 U.S. 489.) Thus, an economic regulation is subject to a less strict test while a more stringent test is utilized when the law interferes with consitutionally protected rights. (*Papachristou* v. *City of*

---

[8]While state constitutional provisions can be interpreted to guarantee more protection than similar safeguards in the federal Constitution, "prudent reasoning, however, supports the position that vagueness analysis is coextensive under both the federal and California due process clause." (*Allen* v. *Superior Court* (1980) 113 Cal.App.3d 42, 53-55 [169 Cal.Rptr. 608].)

*Jacksonville* (1972) 405 U.S. 156, 162 [31 L.Ed.2d 110, 115, 92 S.Ct. 839].) Further, a scienter requirement may mitigate a law's vagueness. (*Village of Hoffman Estates* v. *Flipside, supra.*)

■ The standard of review for gauging the definiteness of penal statutes not involving Bill of Rights freedoms[9] is the following: (1) a standard of conduct for those whose activities are proscribed; and (2) a standard for the ascertainment of guilt by the courts called upon to apply it. (*People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].)

Respondent's challenge is based on what it believes are logical inconsistencies within the ordinance. For example, section 13A-2(c) defines drug paraphernalia as follows: "... equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, ... inhaling, or otherwise introducing into the human body a controlled substance *in violation of the Controlled Substances Act..*" (Italics added.)

Respondent contends that the italicized phrase modifies the activities listed, and, for example, would attempt to prohibit "testing ... in violation of the Controlled Substances Act," while in fact "testing" is not prohibited by that act. Thus, it asserts that the ordinance fails to define drug paraphernalia.

However, the courts have an obligation to go to reasonable lengths to "construe enactments to give specific content to terms that might otherwise be unconstitutionally vague" and we may narrow a definition to reach a logical result. (*Associated Home Builders, Etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 598 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; see also *Music Plus Four, Inc.* v. *Barnet, supra,* 114 Cal.App.3d 113 [170 Cal.Rptr. 419]; and *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636].) Therefore, we read the definition of drug paraphernalia as including the items designated, used for the enumerated activities with regard to a controlled substance, *which controlled substance* is in violation of the Controlled Substances Act.

■ Respondent also believes that the phrase "in violation of the Controlled Substances Act" excludes marijuana because use of marijua-

---

[9]Section 13A-5 restricts advertisements, but is not challenged as being vague. (See discussion, *infra.*)

na is not in violation of that act. This argument also fails, as respondent apparently overlooks the fact that marijuana is indeed defined as a controlled substance in section 11054, subdivision (d)(10). Moreover, the ordinance itself defines marijuana as being a controlled substance.

■ While the language of the ordinance may not be precise, the courts have consistently held that lack of precision is not itself offensive to the requirements of due process.[10] Rather the language need only convey a sufficiently definite warning as to the proscribed conduct. (*CSC* v. *Letter Carriers* (1973) 413 U.S. 548, 578-579 [37 L.Ed.2d 796, 816-817, 93 S.Ct. 2880].)

■ Respondent also attacks section 13A-8 which attempts to ensure that one charged, for example, with the smoking of marijuana cannot suffer a greater penalty for the possession of a "roach clip" than for the substantive offense itself. We find no merit to the argument that this section is ambiguous and indefinite.

■ Finally, respondent challenges as vague the phrase "designed for use," as it appears in the ordinance. Several California cases have been faced with a similar challenge to local enactments not patterned after the Model Act. (*Music Plus Four, Inc.* v. *Barnet, supra,* 114 Cal. App.3d 113; *Music Plus* v. *Baker* (1981) 125 Cal.App.3d 819 [178 Cal.Rptr. 415]; *Music Plus Four, Inc.* v. *City of Los Angeles* (1981) 125 Cal.App.3d 829 [178 Cal.Rptr. 296]; *Licorice Pizza Records & Tapes, Inc.* v. *County of Los Angeles* (1981) 125 Cal.App.3d 825 [178 Cal.Rptr. 309].)

In *Music Plus Four, Inc.* v. *Barnet, supra,* the court interpreted a Westminster ordinance which referred to paraphernalia "for smoking or injecting"; and items "designed for the smoking" of certain substances. It was alleged that the terms were so broad that neither the store owner nor enforcement officers could know what items were included. However, the court held: "[¶] Clearly the proscribed devices are limited by the context to devices *being sold or displayed for sale for the purpose of smoking or otherwise using the specified drugs.* Moreover, we are convinced that no reasonably intelligent person, be it store owner or police officer, would have any difficulty determining whether such devices are

---

[10]Respondent also attacks section 13A-6 since it refers to drug paraphernalia as defined by section 13A-1, when in fact the definition is found in section 13A-2. This apparent typographical error does not require a finding of unconstitutionality.

being displayed for the purpose of sale for consuming or injecting drugs." The court recognized that "[A] teaspoon in a room displaying housewares could not reasonably be found to be displayed for the purpose of sale for consuming drugs or narcotics. Conversely, a teaspoon in a record store at least suggests that the display is for sale for some purpose other than eating. Moreover, the display of a teaspoon along with water pipes, roach clips, and cigarette papers specifically designed for smoking marijuana, leaves no doubt about the purpose for which the displayed items are offered for sale." (Italics in the original.) (*Music Plus Four, Inc.* v. *Barnet, supra,* 114 Cal.App.3d at p. 128.)

To avoid any question of vagueness the court held its application limited to persons who knowingly display such items for sale for the purpose of drug use, a limitation already included in the ordinance in the case at bench. (See also *Music Plus* v. *Baker, supra,* 125 Cal.App. 3d 819; *Music Plus Four, Inc.* v. *City of Los Angeles, supra,* 125 Cal. App.3d 829.)

In *Licorice Pizza Records & Tapes, Inc.* v. *County of Los Angeles, supra,* 125 Cal.App.3d 825, the ordinance in question defined drug paraphernalia, in pertinent part as follows: "[¶] (a) Any item whether useful for non drug related purposes or not, which is displayed, grouped with other items, advertised, or promoted in a manner to reasonably suggest its usefulness in the growing, . . . or ingesting of marijuana, . . . or any controlled substance as defined in the Health and Safety Code of the State of California.

"(b) Any item, whether useful for non drug related purposes or not, which is designed, decorated or adorned in a manner to reasonably suggest its usefulness in the growing, . . . or ingesting of marijuana, . . . or any controlled substance as defined in the Health and Safety Code of the State of California." (*Licorice Pizza Records & Tapes, Inc.* v. *County of Los Angeles, supra,* 125 Cal.App.3d at p. 828.) The court concluded that the ordinance was even more specific than in *Barnet, supra,* and made explicit what *Barnet* reached by inference: "that the evil in certain devices is not necessarily inherent in the device itself but in the manner in which it is promoted for drug purposes." (*Licorice Pizza Records & Tapes, Inc.* v. *County of Los Angeles, supra,* 125 Cal.App. 3d at p. 827.)

Additionally, both appellants and respondent cite numerous federal court decisions specifically interpreting local ordinances patterned after

the Model Act, which reached contradictory results. However, the United States Supreme Court recently upheld an even broader, less specific ordinance against a vagueness challenge in *Village of Hoffman Estates v. Flipside, supra*, 455 U.S. 489. The court held that the words "designed for use" meant "to fashion according to a plan," and thus, decided that the enactment dealt with an item principally used with illegal drugs by virtue of its objective features. Therefore, it concluded the reference was to the design of the manufacturer and not the intent of the retailer or customer. (*Village of Hoffman Estates, supra.*) Moreover, *Casbah, Inc. v. Thone* (8th Cir. 1981) 651 F.2d 551, cert. den., 455 U.S. 1005 [71 L.Ed.2d 874, 102 S.Ct. 1642] refused to find the phrase "designed for use" vague, and upheld an ordinance based upon the Model Act.

The case primarily relied upon by respondent in its effort to seek a contrary decision, *Record Revolution No. 6, Inc. v. Parma* (6th Cir. 1980) 638 F.2d 916, was reversed and remanded at 451 U.S. 1013 [69 L.Ed.2d 384, 101 S.Ct. 2998].

The Santa Barbara ordinance, in its requirement that the person violating the act must have both intended the item in question to fall within the definition of drug paraphernalia, and also intended to commit one of the substantive offenses in the act, is far more specific than those previously considered in California, and consistent with those upheld by the federal courts. Indeed, the "knowledge" requirement read into the Westminister and Glendale ordinances is already included, as well as requisite criminal intent.

We agree with the proposition that because the objects have many lawful uses, and because the design characteristics do not distinguish objects intended for lawful use from objects intended for unlawful use, in the great majority of situations, the object by itself will not provide a basis for an inference of its intended use. However, this ordinance does not make·a crime out of constitutionally protected or innocent conduct because of the actions or statements of persons other than the alleged defendant. Rather the requirement of knowledge and intent on the part of the defendant does provide adequate notice and does sufficiently prevent arrest, prosecution or conviction of persons for innocent activities or mistake. A conviction for manufacture or distribution of drug paraphernalia requires proof of such act by a defendant who intends it for use with illegal drugs, knowing it will be so used. The argument that an officer could seize innocent items finds no support. Nothing changes the requirement that searches, seizures and arrests must be based on prob-

able cause. Nor is this different from any situation where law enforcement must make a judgment regarding a defendant's subjective intent based on all the circumstances. Indeed the task is simplified as the ordinance includes the factors which an officer must consider.

FIRST AMENDMENT

Respondent argues that the enforcement of the ordinance may be enjoined on First Amendment grounds since section 13A-5 prohibits the placing of advertisements if one knows or reasonably should know that the purpose of the advertisement is to promote the sale of objects designed or intended for use as drug paraphernalia. While commercial speech is entitled to First Amendment protection (see *Va. Pharmacy Bd. v. Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817]), as with other forms of speech that right is not absolute. (See *Music Plus Four, Inc. v. Barnet, supra*, 114 Cal.App.3d 113.)

Thus, in *People v. Davis* (1968) 68 Cal.2d 481, 486 [67 Cal.Rptr. 547, 439 P.2d 651], the Supreme Court noted: "As emphasized in *Cox v. Louisiana* (1965) 379 U.S. 536, 553-555. . ., illegal conduct is not protected merely because it is in part initiated, evidenced or carried out by language." For example, *People v. Milano* (1979) 89 Cal.App.3d 153 [152 Cal.Rptr. 318] dealt with a Penal Code section which involved the knowing transmission of information relating to wagers or betting. The court stated that the evil sought to be prevented was gambling, and that California had long recognized that the prohibition of gambling was a proper exercise of police power. (See *Casbah, Inc. v. Thone, supra*, 651 F.2d 551.)

In *Pittsburgh Press Co. v. Human Rel. Comm'n.* (1973) 413 U.S. 376 [37 L.Ed.2d 669, 93 S.Ct. 2553] the Supreme Court dealt with an ordinance which forbade newspapers from carrying help wanted advertisements in.sex designated columns. The court held that "discrimination in employment is not only commercial activity, it is *illegal* commercial activity under the Ordinance. We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes." (Italics in original.) (*Pittsburgh Press Co., supra* at p. 388 [37 L.Ed.2d at pp. 378-379].)

If the advertisement, as in the instant case, is encouraging an illegal activity, the principle established by *Pittsburgh Press* is applicable. "Any First Amendment interest which might be served by advertising

an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity." (*Pittsburgh Press Co.* v. *Human Rel. Comm'n., supra,* 413 U.S. at p. 389 [37 L.Ed.2d at p. 679].)

Further, commercial speech which promotes an illegal activity may be restricted without subjecting the restriction to scrutiny under a balancing test. (*Central Hudson Gas* v. *Public Service Comm'n.* (1980) 447 U.S. 557 [65 L.Ed.2d 341, 100 S.Ct. 2343]; *Pittsburgh Press Co.* v. *Human Rel. Comm'n., supra.*)

The advertising prohibited in the instant matter must be intended to promote the sale of drug paraphernalia and thus encourages an activity which is a crime under the Santa Barbara ordinance. Under the foregoing analysis, it does not violate the First Amendment.

The judgment is reversed.

Kingsley, Acting P. J., and McClosky, J., concurred.