[No. D004807. Fourth Dist., Div. One. June 17, 1987.]

A & B CATTLE COMPANY OF NEVADA, INC., Plaintiff and Respondent, v.
CITY OF ESCONDIDO, Defendant and Appellant.

1034

**COUNSEL**

David R. Chapman, City Attorney, John H. Serrano, Assistant City Attorney, and Jeffrey R. Epp, Deputy City Attorney, for Defendant and Appellant.

Thomas F. Homann for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—City of Escondido (City) appeals an order granting judgment on the pleadings permanently enjoining it from enforcing a licensing ordinance regulating the sale of materials designed or marketed for use with illegal drugs (Escondido Municipal Code (EMC), § 16-190). We affirm because state law (Health & Saf. Code,[1] §§ 11364.7, 11014.5) has preempted this regulatory field.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 1982, the City enacted Ordinance No. 82-41, adding section 16-190 to the EMC,[2] declaring it "unlawful for any person or persons as

---

[1] All statutory references are to the Health and Safety Code unless otherwise specified.

[2] EMC, section 16-190 provides: "(a) *License required.* It shall be unlawful for any person or persons as principal, clerk, agent or servant to sell any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal drugs, as defined by the laws of the State of California, without obtaining a license therefor. Such licenses shall be in addition to any or all other licenses held by applicant.

"(b) *Application.* An application to sell any item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal drugs shall, in addition to the requirements of section 16-190, be accompanied by affidavits by applicant and each and every employee au-

principal, clerk, agent or servant to sell any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal drugs, as defined by the laws of the State of California, without obtaining a license therefor." (EMC, § 16-190, subd. (a).) The ordinance requires applications for this license to be accompanied by affidavits by applicant and each employee authorized to sell such items verifying they have never been convicted of a drug-related offense. The ordinance prohibits the sale or giving of the items described in subdivision (a) to any minor, while requiring the maintenance of detailed records pertaining to every sale of such items. A violation of any provision of EMC section 16-190 is a misdemeanor, punishable by a fine not exceeding $500 or imprisonment not exceeding six months, or both.

Later in 1982, the Legislature enacted Senate Bill No. 341, effective January 1, 1983, adding sections 11014.5 and 11364.7. (Stats. 1982, ch. 1278, §§ 1, 2 respectively, pp. 4725-4728.) Section 11014.5 defines "drug paraphernalia"[3] and establishes criteria for courts to consider when deter-

---

thorized to sell such items that such person has never been convicted of a drug-related offense.

"(c) *Minors.* It shall be unlawful to sell or give items as described in section 16-190(a) in any form to any male or female child under eighteen (18) years of age.

"(d) *Records. Every* licensee must keep a record of every item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal drugs which is sold and this record shall be open to the inspection of any police officer at any time during the hours of business. Such record shall contain the following:

"(i) The name, address, and age of the purchaser;

"(ii) The type of identification used to verify the age of the purchaser including the license, account, *or* serial number thereof;

"(iii) The name and quantity of the product;

"(iv) The date and time of the sale; and

"(v) The licensee or agent of the licensee's signature.

"Falsification of such record or any portion thereof or presentation by any purchaser of false identification shall be a violation of this section. Such records shall be retained for not less than two (2) years.

"(e) *Regulations.* The applicant shall comply with all applicable regulations of the Police Department of the City of Escondido.

"(f) *Fees.* The fee for the license referred to in section 16-190(a) shall be one hundred fifty dollars ($150.00) per year.

"(g) *Penalty.* Any person violating any provision of this section shall be guilty of a misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00) or imprisonment not exceeding six (6) months, or both such fine and imprisonment. (Ord. No. 82-41, § 1, 4-28-82.)" (Italics in original.)

[3] Section 11014.5, subdivision (a) provides in pertinent part: " 'Drug paraphernalia' means all equipment, products and materials of any kind which are designed for use or marketed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compound-

mining what constitutes drug paraphernalia. Section 11364.7 makes it a misdemeanor for anyone to deliver, furnish, transfer, possess, manufacture with intent to deliver, furnish, or transfer drug paraphernalia; provides those who are over 18 years of age and violate these provisions by delivering, furnishing or transferring paraphernalia to a minor at least 3 years their junior may be punished by a fine of not more than $1,000 or by imprisonment of not more than 1 year, or both; declares the violation of its provisions is cause to revoke any business or liquor license; and, specifies that all drug paraphernalia defined by section 11014.5 is subject to forfeiture and seizure by any peace officer.[4]

Four years after enacting its drug paraphernalia ordinance, the City decided to begin enforcing it. The City "alerted" A & B Cattle Company of Nevada, Inc. (A&B), which operates the F Street Bookstore, of its intention. Forewarned, A&B obtained an injunction preventing enforcement of the ordinance on the ground it is preempted by sections 11014.5 and 11364.7.[5]

---

ing, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this division."

[4] Section 11364.7 provides: "(a) It is a misdemeanor for any person to deliver, furnish, or transfer, or to possess with intent to deliver, furnish, or transfer, or to manufacture with intent to deliver, furnish or transfer, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this division.

"(b) Any person 18 years of age or over who violates subdivision (a) by delivering, furnishing, or transferring drug paraphernalia to a person under 18 years of age who is at least three years his or her junior is guilty of a misdemeanor and upon conviction may be imprisoned for not more than one year, fined not more than one thousand dollars ($1,000), or by both.

"(c) The violation, or the causing or the permitting of a violation, of subdivision (a) or (b) by a holder of a business or liquor license issued by a city, county, or city and county, or by the State of California, and in the course of the licensee's business shall be grounds for the revocation of any such license.

"(d) All drug paraphernalia defined in Section 11014.5 is subject to forfeiture and may be seized by any peace officer pursuant to Section 11471.

"(e) If any provision of this section or the application thereof to any person or circumstances is held invalid, it is the intent of the Legislature that the invalidity shall not affect other provisions or applications of this section which can be given effect without the invalid provision or application and to this end the provisions of this section are severable."

[5] We note this matter was submitted for decision to a trial judge who actively participated in the enactment of the state legislation in controversy, interpretation of which was the linchpin in resolving the dispositive legal issue. Whatever ambiguities were discerned by the City, they were not apparent to the court, who declared: "Counsel, I should tell you this: The provisions which are referred of the Health & Safety Code—I sat on the Criminal Justice Committee at the time they were being offered. I was put on that Committee, I learned later, by the speaker because he wanted someone to deal with the issues and misread my own attitude and feelings, unfortunately for him. That's true; that I helped negotiate the compromise legislation; that that legislation was written by Mr. Gaugan (phonetic), myself, and Mr. Cramer

### Governing Law on Preemption

■ "Under the police power granted by the Constitution, counties and cities have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law." (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) More specifically, article XI, section 7 of the California Constitution provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." ■ Where local legislation conflicts with general law, it is void. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290 [219 Cal.Rptr. 467, 707 P.2d 840]; *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484 [204 Cal.Rptr. 897, 683 P.2d 1150]; *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807 [100 Cal.Rptr. 609, 494 P.2d 681].) ■ "Apart from this limitation, the 'police power [of a county or city] under this provision ... is as broad as the police power exercisable by the Legislature itself.'" (*Candid Enterprises, Inc.,* v. *Grossmont Union High School Dist., supra,* 39 Cal.3d at p. 885, quoting *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140 [130 Cal.Rptr. 465, 550 P.2d 1001].)

■ A local legislative enactment will be invalidated when it duplicates, contradicts, or infringes upon an area completely occupied by general law, either expressly or by legislative implication. Moreover, where the subject matter of the local legislation has been entirely occupied by state general law, supplementary or complementary local legislation, even pertaining to matters otherwise properly characterized as municipal in character, is prohibited. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at pp. 290-291; *People* ex rel. *Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at p. 484; *Lancaster* v. *Municipal Court, supra,* 6 Cal.3d at pp. 807-808.)

### State Law has Preempted the Regulatory Field Regarding Drug Paraphernalia to the Exclusion of Local Legislation

■ Preliminarily, we note the Legislature has not expressly prohibited local regulations within its statutory scheme governing the manufacture

---

(phonetic), who was a former district attorney from Riverside County, as I recall; Riverside or San Berdu—I think Riverside, who is no longer in the Legislature because of his efforts to make a compromise the right way.

"I am quite familiar with these provisions and I can assure you without question that our intent was to preempt local law." Neither party expresses concern about the trial judge's preliminary remarks, nor suggests his personal involvement while a legislator is an issue on this appeal. In any event, we do not rely on the trial court's statement in resolving whether the Legislature intended to preempt this regulatory area concerning drug paraphernalia with its statutory scheme.

and distribution of drug paraphernalia. Moreover, no state law appears to explicitly regulate the licensing of drug paraphernalia retailers. However, a plain reading of these enactments shows each seeks to regulate the sale and distribution of paraphernalia designed or marketed for use with illegal drugs by imposing penal sanctions. Because the only "illegal" drugs are those so designated by state law and both the City and state purport to regulate the sale of identical materials, the enactments are identical in purpose. The enactments are duplicative because each makes it unlawful to distribute drug paraphernalia to minors. They are contradictory insofar as a violation of that provision under the ordinance is simply punishable as a misdemeanor by a fine not exceeding $500 or imprisonment not exceeding six months, or both, whereas subdivision (b) of section 11364.7 provides that persons who are eighteen years of age or older and unlawfully distribute drug paraphernalia to a minor at least three years their junior are guilty of a misdemeanor punishable by a fine not exceeding $1,000 or imprisonment for more than one year, or both. Moreover, section 11364.7, subdivision (a) makes it unlawful for *any person* to distribute or manufacture drug paraphernalia, knowing or under circumstances where one reasonably should know, it will be employed to introduce into the human body a controlled substance. In comparison, by implication through the requirement of licensing and no express prohibition as to sale to adults, the City appears to be sanctioning the sale of drug paraphernalia to adults.

In fact, it is difficult to believe the City is serious in its attempt to defend this ordinance which, on its face, purports to permit businesses to sell goods which are completely banned by state law, so long as the City issues a special local business license. ▬ The general rule is that conduct or activities which are unlawful or criminal in nature may not be made the subject matter of municipal licensing. (9 McQuillin, Municipal Corporations (3d ed. rev.) §§ 26.23b, 26.51, pp. 61, 138.) On the other hand, even where there is preemption, a municipality may be entitled to collect license fees for the right to engage in *lawful* activities relating to the subject matter preempted. (See *Lancaster* v. *Municipal Court, supra,* 6 Cal.3d at p. 809.)[6] ▬ Indeed, local law enforcement officers must enforce state and local laws alike, and any sale or distribution of unlawful drug paraphernalia subjects the seller or distributor to arrest and fine under state law regardless whether licensed by the City. (9 McQuillin, Municipal Corporations, *supra,* § 26.23b, at p. 61.)

---

[6]"When the constitution grants to local authorities the right to make and enforce police regulations 'not in conflict with general laws,' it is intended that local *regulations* of every kind may be made and enforced, except where the *particular act* described by the ordinance is the same act already included within the category of crimes as covered by the general codes or statutes. . . ." (*People* v. *Fages* (1916) 32 Cal.App. 37, 40 [162 P. 137]; italics in original.)

The City challenges this assessment, contending its ordinance neither contradicts nor duplicates section 11364.7 because the latter is completely silent with regard to licensing and record keeping; in light of section 11364.5, subdivision (g), the state's statutory scheme specifically contemplates licensing by local governmental bodies; and, finally, because section 11364.7, subdivision (a) requires a distributor to know or be constructively aware the drug paraphernalia will be used for its "intended" purpose, it clearly implies the general laws do not make all sales of drug paraphernalia unlawful. However, upon examining underlying legislative history, we conclude the Legislature's modification of its general statutory scheme through the addition of sections 11014.5 and 11364.7 shows its intent to establish a total ban on the manufacture and distribution of drug paraphernalia in California, so as to occupy the entire regulatory field to the exclusion of local legislation.

■ The governing standard for determining whether an area has been fully occupied on the basis of legislative implication is settled. "In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme. There are three tests: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.' " (*People* ex rel. *Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at p. 485, quoting *In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809]; *Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at pp. 292-293; *Candid Enterprises, Inc.* v. *Grossmont Unified High School Dist., supra,* 39 Cal.3d at p. 886.)

Before the enactment of sections 11014.5 and 11364.7 in 1982 (Stats. 1982, ch. 1278, §§ 1, 2, pp. 4725-4728), the state's statutory scheme regulating the marketing and distribution of drug paraphernalia included section 11364[7] regulating the use of drug paraphernalia by adults, section 11364.5[8]

---

[7]Former section 11364 provided: "It is unlawful to possess an opium pipe or any device, contrivance, instrument or paraphernalia used for unlawfully injecting or smoking (1) a controlled substance specified in subdivision (b) or (c) of Section 11054, specified in paragraph (10), (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055 or (2) a controlled substance which is a narcotic drug classified in Schedule III, IV, or V."

[8]Section 11364.5 essentially requires any place of business in which drug paraphernalia is kept or displayed to maintain a separate room or enclosure to which persons under the age of

prohibiting minors from being in places where drug paraphernalia is displayed, and Penal Code section 308, subdivision (a)[9] prohibiting the sale or distribution of drug paraphernalia to minors. (See *Bamboo Brothers* v. *Carpenter* (1982) 133 Cal.App.3d 116, 123 [183 Cal.Rptr. 748].) Moreover, section 11353 declared it unlawful for adults to solicit or encourage minors to violate specified provisions of the Uniform Controlled Substances Act (§§ 11000-11651). (*Music Plus Four, Inc.* v. *Barnet* (1980) 114 Cal.App.3d 113, 122 [170 Cal.Rptr. 419].) Consequently, the former statutory scheme simply made it a misdemeanor to sell drug paraphernalia to minors and required that businesses marketing drug paraphernalia to adults display it in separate rooms or enclosures where minors were not admitted. The law was narrowly focused to the issues of exposure and sale of drug paraphernalia to minors.[10] Finally, the statutory scheme regulating the marketing of drug paraphernalia expressly permitted local governments to enact ordinances to regulate the sale or display of drug paraphernalia to minors. (Pen. Code, § 308, subd. (c)[11] ; § 11364.5, subd. (g)[12] ; uncod. § 2 of Stats. 1980, ch. 505, p. 1063, as amended by Stats. 1982, ch. 454, § 192, p. 1896.[13]) This former statutory scheme did not preempt local regulation of businesses displaying drug paraphernalia to minors (*Music Plus Four, Inc.* v. *Barnet,*

[18] not accompanied by a parent or legal guardian are excluded. The provision also includes a definition of "drug paraphernalia" substantially similar to that set forth within subdivision (a) of section 11014.5; a nonexhaustive list of drug paraphernalia similar to that which was later enacted in section 11014.5, subdivision (a); a list of those persons deemed exempt from the law; and the exclusive remedy of revocation or nonrenewal of an offender's business license or permit.

[9] Penal Code section 308, subdivision (a) provides: "Every person, firm or corporation which knowingly sells or gives or in any way furnishes to another person who is under the age of 18 years any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, or any other instrument or paraphernalia that is designed for the smoking or ingestion of tobacco, products prepared from tobacco, or any controlled substance, is guilty of a misdemeanor."

[10] Apparently, under section 11364 regulating the use of drug paraphernalia by adults, only a fine pursuant to section 11372.5 could be imposed on any person violating that provision. (See Comment (1983) 14 Pacific L.J. 357, 543.)

[11] Penal Code section 308, subdivision (c) provides: "Nothing in this section or any other provision of law shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county or a city and county regulating the sale or display to persons under the age of 18 years of items described in this section."

[12] Section 11364.5, subdivision (g) provides: "Notwithstanding any other provision of law, including Section 11374, violation of this section shall not constitute a criminal offense, but operation of a business in violation of the provisions of this section shall be grounds for revocation or nonrenewal of any license, permit, or other entitlement previously issued by a city, county, or city and county for the privilege of engaging in such business and shall be grounds for denial of any future license, permit, or other entitlement authorizing the conduct of such business or any other business, if the business includes the sale of drug paraphernalia."

[13] Section 192 of Stats. 1982, chapter 454 provides: "Nothing in this act or any other provision of law shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county or a city and county regulating the sale or display to persons under the age of 18 years of items described in Section 11364.5 of the Health and Safety Code or in Section 308 of the Penal Code."

*supra,* 114 Cal.App.3d at pp. 121-125) and thus permitted a county to enact and enforce an ordinance designed to broaden the scope of state laws by prohibiting use, possession and display to *all* persons and include drug paraphernalia relating to marijuana *(Bamboo Brothers* v. *Carpenter, supra,* 133 Cal.App.3d at pp. 122-125).[14]

 Patterned after the Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the United States Department of Justice, the Legislature enacted sections 11014.5 and 11364.7 with the intent to eliminate the use and sale of drug paraphernalia and thus offset the expanded sale abuse of controlled substances. *(People* v. *Nelson* (1985) 171 Cal.App.3d Supp. 1, 12 [218 Cal.Rptr. 279]; *People* v. *Clark-Van Brunt* (1984) 158 Cal.App.3d Supp. 8, 10, fn. 1 [205 Cal.Rptr. 144]; 14 Pacific L.J., *supra,* at p. 542.) As summarized above, these sections totally ban the manufacture and distribution of drug paraphernalia as statutorily defined in California, making it a misdemeanor to deliver, furnish, or transfer drug paraphernalia to any person, or to possess or manufacture with the intent to deliver, furnish or transfer drug paraphernalia to another. Thus, these enactments prohibit the retailing of drug paraphernalia to both adults and minors. Therefore, the Legislature's formulating its statutory scheme and express intent to expand its regulation of drug paraphernalia to adults as well, show its intent to preempt the field of drug paraphernalia regulation to the exclusion of local ordinance. *(People* v. *Nelson, supra,* 171 Cal.App.3d Supp. at p. 19, fn. 19; see *Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 295.)

Our conclusion this pervasive, comprehensive statutory scheme regulating drug paraphernalia was intended by the Legislature to preempt the entire field to the exclusion of local legislation is further supported by the fact the Legislature included no express language permitting local regulation on these matters as it did within Penal Code section 308, subdivision (c) and uncodified section 2 of Statutes 1980, chapter 505, page 1063, as amended by Statutes 1982, chapter 454, section 192, page 1896, with regard to section 11364.5. However, stressing preemption by implication of legislative intent may not be found when the Legislature has expressed an intent to permit local regulations *(People* ex rel. *Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at p. 485), the City argues the Legislature's failure to repeal these provisions shows its intent to permit local regulation and licensing.

---

[14] During the mid-1970's, amendments to the Uniform Controlled Substances Act decriminalized the possession of small amounts of marijuana and the possession and sale of paraphernalia for the use of marijuana and certain other substances. *(Bamboo Brothers* v. *Carpenter, supra,* 133 Cal.App.3d at p. 124; *Music Plus Four, Inc.* v. *Barnet, supra,* 114 Cal.App.3d at pp. 122, fn. 3, 123-124; see generally Stats. 1975, ch. 248, p. 641.)

The City recognizes a statutory incongruity. ■ Our current statutory scheme on the one hand directs businesses on how drug paraphernalia must be marketed, while the other hand imposes misdemeanor penalties if a retailer complies with those provisions to market drug paraphernalia. Clearly, the law as codified within Penal Code section 308 and section 11364.5 is inconsistent with sections 11014.5 and 11364.7, requiring the former to give way to the latter. For, it is a firmly established principle of statutory instruction that "where there are potentially conflicting legislative enactments, the latter enactment controls." (*People* v. *Pitcock* (1982) 134 Cal.App.3d 795, 805 [184 Cal.Rptr. 772], and cases there cited.)

■ Stressing how the relevant field occupied by an allegedly preemptive state statutory scheme is defined is often crucial to the disposition (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist., supra,* 39 Cal.3d at p. 886, fn. 4; *California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 27-28 [61 Cal.Rptr. 618]), the City asserts its ordinance simply controls record keeping and licensing to assist local authorities in determining whether unlawful drug paraphernalia has been sold and to whom. By attaching such a narrow construction to its ordinance, the City urges it does not conflict with the state statutory scheme regulating the manufacture and sale of drug paraphernalia. Yet, both laws burden the sale of drug paraphernalia. Where state law absolutely prohibits the sale of certain merchandise on pain of criminal penalty, the City cannot impose additional penalties for the same conduct, regardless of whether they are under the guise of licensing fees or the burdensome requirement of maintaining records of sales. Such an attempt at supplementary control at the local level within this context is prohibited; for, where an ordinance is in substance a criminal statute attempting to prohibit conduct proscribed or permitted by state law either explicitly or impliedly, it is preempted. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 293.)

■ The City further urges the ordinance is not preempted because section 11364.7 does not ban all sales of drug paraphernalia, but only the delivery, furnishing or transferring of drug paraphernalia with knowledge that such items will be used illegally, and thus the state has not declared that all sales of drug paraphernalia are unlawful. The City then emphasizes its ordinance requires no scienter but simply mandates record keeping and licensing. This argument is also unpersuasive.

■ A municipality's "right to utilize its licensing power as a means to regulate businesses conducted within its borders can scarcely be disputed." (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 296.) Because every

municipality is unique requiring local government to address problems generated by business involvement in activities that may be inimical to the health, safety and welfare of its community, "a local governmental body may properly determine that a particular business fosters, profits from and provides an environment for activities proscribed by state law. An ordinance is not transformed into a statute prohibiting crime simply because the city uses its licensing power to discourage illegitimate activities associated with certain businesses. Most licensing ordinances have a direct impact on the enforcement of state laws which have been enacted to preserve the health, safety and welfare of state and local citizens. This fact does not deprive a municipality of the power to enact them." *(Id.* at pp. 298-299.) Moreover, "an ordinance is not preempted simply because it seeks to alleviate the burden that local enforcement of state law imposes on police and other city officials. [Citation.] That objective is a sound basis for local legislation." *(Id.* at p. 299.) In *Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d 277, the Supreme Court recognized that although certain provisions of the challenged ordinance which require disclosure of information no doubt aided law enforcement in investigating potential criminal activity, and conditioning the granting of an application upon the absence of convictions of drug-related offenses may raise other constitutional questions, they afford no bases for preemption. *(Ibid.)*

■ However, a closer look at the allegedly lawful conduct the City here seeks to regulate by licensing reveals the subject matter is clearly within the state's statutory scheme regulating drug paraphernalia. Presumably, the City's argument seeks to salvage its licensing regulation as to sales of drug paraphernalia where the seller is not on actual or constructive notice of the buyer's illegal intent. ■ However, only items "designed for use or marketed for use" with illegal drugs are defined as drug paraphernalia. (§ 11014.5, subd. (a).) This "design" standard has been construed as encompassing " 'at least an item that is principally used with illegal drugs by virtue of its objective features, i.e., features designed by the manufacturer. A business person of ordinary intelligence would understand that this term refers to the design of the manufacturer, not the intent of the retailer or customer. It is also sufficiently clear that items which are principally used for nondrug purposes, such as ordinary pipes, are not "designed for use" with illegal drugs.' " *(People* v. *Nelson, supra,* 171 Cal.App.3d Supp. at p. 10, quoting *Hoffman Estates* v. *Flipside, Hoffman Estates* (1982) 455 U.S. 489, 501 [71 L.Ed.2d 362, 373, 102 S.Ct. 1186].) Section 11014.5, subdivision (b) defines "marketed for use" as meaning "advertising, distributing, offering for sale, displaying for sale, or selling in a manner which promotes the use of equipment, products, or materials with controlled substances." Essentially, this " 'standard requires scienter, since a retailer could scarcely

"market" items "for" a particular use without intending that use.'" *(People v. Nelson, supra,* 171 Cal.App.3d Supp. at p. 10, quoting *Hoffman Estates v. Flipside, Hoffman Estates, supra,* 455 U.S. at p. 502 [71 L.Ed.2d at p. 374].) Neither state law nor the ordinance applies to merchants selling innocuous or neutral items neither designed nor marketed for use with illegal drugs, 'although a buyer may intend such use. Thus, the reach of the ordinance would regulate only those merchants who retail drug paraphernalia neither knowing nor on constructive notice of the buyers' intended illegal use. However, subdivision (d) of section 11364.7 provides for the forfeiture and seizure of all drug paraphernalia defined in section 11014.5 by any peace officer pursuant to section 11471. Section 11471 in turn provides: "Property subject to forfeiture under this division may be seized by the Attorney General upon process issued by any court having jurisdiction over the property. *Seizure without process may be made if any of the following situations exist*:

"(a) The seizure is incident to an arrest or a search under a search warrant.

"(b) The property subject to seizure has been the subject of a prior judgment in favor of the state and a criminal injunction or forfeiture proceeding based upon this division.

"(c) *The Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety.*

"(d) *The Attorney General has probable cause to believe that the property was used or is intended to be used in violation of this division.*" (Italics added.) These provisions provide for the forfeiture and seizure of *all* drug paraphernalia offered for sale, regardless whether the merchant has been charged with a misdemeanor for unlawfully distributing drug paraphernalia. ▮▮ Hence, the state statutory scheme clearly indicates a legislative intent to preclude local regulation, including licensing, of the marketing and distribution of drug paraphernalia, since the state statutory scheme sets forth a complete ban on the manufacturing and distribution of drug paraphernalia providing for its seizure and forfeiture, as well as the imposition of criminal penalties where scienter is present.

▮▮ Finally, our determination is further supported by an opinion issued by the Attorney General's Office. "[O]pinions of the Attorney General are not binding on the courts, although they have been accorded 'great weight' in matters of this nature, where controlling authority construing the provision is absent." *(San Diego Union v. City Council* (1983) 146

Cal.App.3d 947, 954 [196 Cal.Rptr. 45], and cases there cited.) In a memorandum dated July 28, 1983, to Deputy Attorney General Linda A. Cabatic from Deputy Attorney General John R. Gorey, the Office of the Attorney General responded affirmatively to Assemblyman Richard E. Floyd's inquiry of whether the enactment of sections 11014.5 and 11364.7 preempted the field of drug paraphernalia to the exclusion of local regulation.[15]

## DISPOSITION [16]

The order is affirmed.

Wiener, Acting P. J., and Butler, J., concurred.

---

[15]The City's reliance on *Bamboo Brothers* v. *Carpenter, supra,* 133 Cal.App.3d at pages 122-125 and *Music Plus Four, Inc.* v. *Barnet, supra,* 114 Cal.App.3d at pages 121-125, is misplaced, as each decision preceded the enactment of sections 11364.7 and 11014.5, and were made at a time when no pervasive, comprehensive statutory scheme regulating drug paraphernalia existed.

[16]Because of our disposition, we do not address A&B's further argument the ordinance cannot be complied with without self-incrimination.