TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-407 |
| of | : | |
| | : | January 27, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE JUDY K. SKOUSEN, CITY ATTORNEY, CITY OF BAKERSFIELD, has requested an opinion on the following question:

Would a city ordinance which establishes a misdemeanor offense for loitering for the purpose of engaging in prostitution or for the purpose of engaging in a drug-related offense be preempted by state law?

CONCLUSION

A city ordinance which establishes a misdemeanor offense for loitering for the purpose of engaging in prostitution would be preempted by state law; a city ordinance which establishes a misdemeanor offense for loitering for the purpose of engaging in a drug-related offense would not be preempted by state law.

ANALYSIS

The question presented for resolution concerns two proposed city ordinances, one which would make it unlawful for any person to loiter in or near a public place for the purpose of engaging in prostitution, as such offense is defined in Penal Code section 647,[1] and one which would

_____

[1]Penal Code section 647 states in part:

make it unlawful for any person to loiter in or near a public place for the purpose of engaging in an offense involving the possession, use, or sale of a controlled substance, as such offense is defined in the Uniform Controlled Substances Act (Health & Saf. Code, § 11000 et seq.; "Act").[2]  In both instances, the stated purposes for adoption of the ordinance would be to assist local law enforcement officers in controlling unlawful activities and to minimize the adverse effect these activities have upon the city.

We are asked to determine whether the adoption of the proposed ordinances would come within the "police power" authorization of article XI, section 7 of the Constitution, which provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."  We conclude that the proposed loitering/prostitution ordinance would be preempted by the state's general laws under directly applicable case law precedent, but that the loitering/drug activity ordinance would not be preempted.

In keeping with the limitation imposed upon the constitutional grant of authority contained in article XI, section 7, it has been repeatedly held that where a local police power ordinance conflicts with general law, it is void.  (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290; *A & B Cattle Co.* v. *City of Escondido* (1987) 192 Cal.App.3d 1032, 1038.)  For purposes of the constitutional provision, a "conflict" has been described by the Supreme Court as follows:

> "`Conflicts exist if the ordinance duplicates [citations], contradicts [citations], or enters an area fully occupied by general law, either expressly or by legislative implication [citations].  If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject [was] otherwise one properly characterized as a "municipal affair." [Citation.]'  [Citations.]"  (*Cohen* v. *Board of Supervisors*, *supra*, 40 Cal.3d at 290-291.)

The California Supreme Court has determined that the regulation of the criminal aspects of sexual conduct is a field that has been fully occupied by the state.  (*Cohen* v. *Board of Supervisors*, *supra*, 40 Cal.3d at 294; *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805.)  "The constant attention the Legislature has given to the criminal aspects of sexual activity establishes that in the absence of an express statutory provision to the contrary, this area of the law is intended to be wholly within the control of the Legislature and not subject to local regulation."  (*Lancaster* v. *Municipal Court*, *supra*, 6 Cal.3d at 808.)

In *Gates* v. *Municipal Court* (1982) 135 Cal.App.3d 309, the court dealt with a local ordinance which, like the one here, prohibited loitering for the purpose of soliciting prostitution.  The



"Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Who solicits or who agrees to engage in or who engages in any act of prostitution. . . ."

[2]All section references herein are to the Health and Safety Code unless otherwise specified.

ordinance was held to be preempted by state law on the basis that it sought to regulate sexual conduct and attempted to create a new form of sexual crime. (*Id*., at p. 320.) The court in *Gates* was especially cognizant of the fact that state law has preempted the field of criminal sexual activity and that the Legislature intended to keep any sexual conduct not criminalized by state penal statutes free of criminal sanction. (*Id*., at pp. 317-318.) Its preemption analysis, which was cited by the Supreme Court with approval in *Cohen* v. *Board of Supervisors*, *supra*, 40 Cal.3d at 277, represents current legal precedent regarding loitering ordinances which seek to regulate the criminal aspects of sexual conduct. We must therefore conclude that a local ordinance which establishes a misdemeanor offense for loitering for the purpose of prostitution would be preempted by state law.[3]

We now turn to the proposed ordinance which would prohibit loitering for the purpose of engaging in a drug-related offense. The ordinance would address the loitering activity which is often preliminary to the unlawful possession, use, or sale of a controlled substance, as such offense is defined in the Act. In essence, the ordinance would seek to minimize the adverse effects that drug-trafficking has on the community by limiting the means by which such activity can take place.[4] In so doing, the ordinance would neither duplicate nor contradict general law. Would it, however, enter an area fully occupied by general law?

The Act has been described as providing "a pervasive and unified system to regulate legitimate uses and control unlawful traffic in and abuse of prescription and nonprescription drugs." (*People* v. *Alexander* (1986) 178 Cal.App.3d 1250, 1253.) Much of the Act is concerned with defining chemical substances and dividing the various drugs into groups. Schedule I, for example, includes LSD, heroin, peyote, and marijuana, among others. (§ 11054.) For substances listed on other schedules, the Act sets out reporting and licensing regulations. (§§ 11100-11136.) Among other things, the Act regulates prescriptions and pharmacists (§§ 11150-11208), establishes the Bureau of Narcotic Enforcement (§§ 11450-11454), and creates rules and procedures for the seizure and forfeiture of property used for drug crimes (§§ 11470-11493).

---

[3]We note however that a least one jurisdiction has been successful in eliminating prostitution from certain areas through the use of temporary restraining orders, which of course are not dependent on criminal laws. (See *The Restraining Hook* (Sept. 1994) California Lawyer, at p. 24.)

[4]The ordinance describes its purpose as follows:

"It is the intent of this ordinance to assist law enforcement personnel of this city in abating the sale of controlled substances. The City Council finds and determines that the sale of controlled substances constitutes a continuing public nuisance which adversely affects the public health, safety and welfare, fuels fear among the community and is a factor which not only depreciates the value of property upon which such activity occurs, but also depreciates the value of adjacent and surrounding properties, and adversely affects the city's image, business, development and housing costs.

"The purpose of this ordinance is, therefore, to further assist law enforcement to minimize the impact which drug sales have on the city's quality of life, overall sense of feeling of safety and security of its citizens, and economic stability. The sale of controlled narcotic substances breeds criminal and gang-related activities and breeds community discontent. This ordinance will serve to mitigate these adverse effects by further limiting the means by which drug sales can occur."

With regard to the possession, use, or sale of controlled substances, the Act contains provisions establishing criminal penalties for unlawful possession (§ 11350), unlawful possession for sale (§ 11351), and unlawful transportation or sale (§ 11352); provides criminal penalties for inducing a minor to make an unlawful sale (§§ 11353, 11354); establishes enhanced penalties for drug offenses involving a minor (§ 11353.1) and for drug trafficking on the grounds of certain facilities or within 1,000 feet of an elementary or secondary school (§§ 11353.1, 11353.6); and provides a criminal penalty for opening or maintaining a place for trafficking in controlled substances (§ 11366).

Neither the Act nor any other state law addresses the problem of loitering for the purpose of committing a drug offense. Defining the relevant field occupied by a particular statutory scheme is often crucial to the preemption analysis. (See *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 886, fn. 4; *A & B Cattle Co.* v. *City of Escondido, supra*, 192 Cal.App.3d at 1043.) Insofar as it relates to the proposed ordinance here, the area which the Act may be said to occupy is that of regulating the possession, use, and sale of controlled substances. While the proposed ordinance may be viewed as an attempt to regulate drug-related activity, does it enter only incidentally the area occupied by the Act?

Although it is true that the ordinance would be keyed to the unlawful use, possession, or sale of a controlled substance in that the purpose of the loitering must be to engage in one of these acts, the ordinance would not require that one of the acts first occur in order for a violation to be proved. The misdemeanor offense would be complete at the time the prohibited loitering has occurred, not at the point where the Act has been violated.

As the ordinance would not turn on whether a violation of the Act has occurred and as it would be aimed at the independently significant act of loitering, we find that its subject matter would not be identical to the regulation of the possession, use, or sale of controlled substances. Even if the ordinance were deemed to have an incidental effect on the enforcement of the criminal provisions of the Act, it would not be preempted. Preemption by the state of an area of law does not preclude local legislation enacted for the public safety which only incidentally affects the preempted area. (*People* v. *Mueller* (1970) 8 Cal.App.3d 949, 954.)

We therefore conclude that a city ordinance which establishes a misdemeanor offense for loitering for the purpose of engaging in a drug-related offense would not be preempted by state law.[5]

\* \* \* \* \*

---

[5]The question presented does not necessitate an evaluation of whether the ordinance would meet other constitutional requirements that may be applicable.